WOODS v. SHORELINE COOPERATIVE APARTMENTS, Inc., et al.

Civ. A. No. 48 C 1023.

United States District Court
N. D. Illinois, E. D.

July 25, 1949.

Wm. S. Kaplan, Chicago, Ill., for Government.

Goldberg & Levin, Chicago, Ill., for Shoreline.

Kenart M. Rahn, Chicago, Ill., for Lumsden.

Turner, Hunt & Debolt, Chicago, Ill., Gann, Secord, Stead & McIntosh, Chicago, Ill., Levy, Goldberg & Lawrence, Chicago, Ill., Marks & Marks, Chicago, Ill., for other defendants.

SHAW, District Judge.

The precise question for decision in this case is the validity of the Housing and Rent Act of 1949, 50 U.S.C.A.Appendix, §§ 1884, 1892–1896, 1899, 1907–1910, because the only basis or reason for claiming jurisdiction in this Court is founded upon that Act. If the Act is constitutional and valid, I have jurisdiction to proceed and determine the issues in question. If the Act is not constitutional I have no power to proceed further. An unconstitutional Act is void at all times and for all purposes, and because jurisdiction can neither be conferred nor waived by consent of the parties it is a question that may be raised at any time in any court. It would be inadvisable for me to proceed further without deciding that basic question, and reluctant as I am to assume so grave a responsibility I must do so.

By bench announcement at the conclusion of the arguments, and after consideration of the original briefs, I have made it clear that I consider the local option provisions of the present Act to be unconstitutional and void. Sec. 204(j) (1, 2, and 3). I shall presently express my reasons for so holding. At that time I stated that I would consider the further question as to whether or not the invalidity of those provisions rendered the entire Act void and would announce my final conclusions in a written opinion. Since that time the parties have filed additional briefs and at my request have submitted to me all those portions of the Congressional Record appearing to be pertinent to the subject, with various passages marked by counsel. I have considered all of these, together with the additional briefs, and after much study and thought am now ready to give my final decision.

Specifically, as to the so-called "local option" provisions, I have never entertained any doubt after reading the original briefs and reading the provisions themselves. No contention has been presented by any counsel in this suit, nor as far as I can learn in the halls of Congress, that this Act is based upon anything except the war powers of Congress, and frequent references to the Congressional Record indicate that those war powers were hardly ever mentioned in debate or reports of committees. The entire theory of Congress is that it is desirable to continue rent controls for a limited time, but in the preamble to the Act it is first stated and most definitely stressed that it is desirable to be through with those controls as rapidly as possible, and the debates of Congress, as well as the preamble to the Act in question, have reference to the economic aftermath of war—none of them to continuation of hostilities nor any reference to the successful prosecution of war. In this opinion I am definitely refusing to consider any facts, although it is obvious to everyone that these rent controls are continued for economic reasons only and that they have no real reference to the prosecution of any war anywhere. Since we have signed no treaties of peace, I assume that we are still at war and that Congress still possesses full war powers. The only question is whether or not the present Act is within the power granted to Congress to declare war, and the implied power to take any act or pass any law to carry that power of declaration into full force and effect. In short, I am assuming that Congress still has the power to enact a valid Rent Control Act.

This brings into immediate focus the question of whether the Act under consideration is within those powers. Inasmuch as this law was only passed a few months ago, and there has been no opportunity for its interpretation by our highest court, I am forced to consider previous decisions on previous Acts and from there to proceed as with any other case of first impression.

Perhaps it is well to start this way. Our United States Supreme Court and the Supreme Courts of many States have many times pointed out that a frequent recurrence to fundamental principles is necessary to the maintenance of our constitutional form of government and this is especially true when legislation is passed under the war powers, because they are invariably brought forth under the fervor of patriotism and the all-prevailing desire of Congress and the courts to aid and not impede the ultimate victory which everyone desires. It has been true after every war and is true after the most recent one that the fundamental principles of the Constitution are likely to be invaded, and unless from time to time we revert to those principles we may eventually find that the liberties of the people and the limitations of the Constitution have been seriously eroded if not completely impaired.

I start with the fundamental principle that Congress has only such powers as are given to it by the Constitution or necessarily implied therefrom to carry those powers into effect, and with the second fundamental principle which is also expressed in the Constitution that all powers not therein expressly given to Congress or prohibited to the States are expressly reserved to the States and to the people. It is also necessary to consider that further constitutional provision that no State shall pass any law impairing the obligation of contract. The present controversy involves all of these provisions.

I am aware of the holdings in Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165, and Marcus Brown Holding Company v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877, and it may be that under those two decisions the provisions of the Constitution prohibiting any State to pass any law impairing the obligation of contract has itself materially been impaired. Those cases, however, concerned the police power of Congress in the District of Columbia and the State Legislature of New York. It would be inappropriate and unjudicial of me to utter any criticism of any decision of the United States Supreme Court. It must be pointed out, however, that it is generally conceded that outside of the District of Columbia and with other exceptions not necessary to be noted here that Congress possesses no police power, 11 Am.Juris. Sec. 255, and since the case can be decided without reference to that particular point I will pass it by.

As above indicated, I have assumed, and throughout this opinion do assume, that the war powers of Congress still exist, but it becomes instantly necessary to consider whether or not these war powers may be delegated to States, municipalities, or other subdivisions of Government. It will be noted on reading the local option provisions of this Act that no standards are set up either for the determination of basic facts or rules for guidance of the States, municipalities, or other political subdivisions, in determining whether or not they shall remain under rent control. As far as Congress is concerned it has attempted to leave the matter entirely open to arbitrary determination by each State or other subdivision to decide for itself whether or not it wants or needs rent control, and this entirely without rules or guide posts of any kind as to whether or not such rent control may be necessary in connection with the prosecution or maintenance of the war effort.

Thus, in paragraph (j)(1), it provides that whenever the Governor of any State advises the Housing Expediter that the Legislature of such State has adequately provided for the establishment and maintenance of maximum rents or has specifically expressed its intent that State rent control shall be in lieu of Federal rent control, with respect to housing accommodations within defense-rental areas in such State, etc., all Federal control shall cease. If it were not for the cases of Block v. Hirsh, and Marcus Brown Holding Co. v. Feldman, supra, there could be little doubt that no State would have any power to establish rental controls, at all, and even with those two cases in the books it is still doubtful if such power exists in any State except under some emergency exercise of police power. Certainly, no State could exercise any portion of the war power. No definition is given as to what a State must do adequately to provide for the maintenance

of maximum rents. There is no guide as to what constitutes sufficient housing or what should constitute maximum rents. The effect is to leave that question to the arbitrary action of any State.

Subsection (j)(2) is even broader and more loose in its provisions for discarding Federal rent control. That section merely provides that if any State (without reference to any war effort or without reference to any reason or limitation on its action) declares that Federal rent control is no longer necessary in such State, or any part thereof, all controls shall be immediately dissolved. It is up to the Legislature to act reasonably or whimsically as it may see fit entirely without reference to any war effort.

Subsection (j) (3) provides for de-control under even more lax conditions in any incorporated city, town or village, merely upon receipt of a resolution of its governing body adopted for that purpose in accordance with applicable local law based upon a finding by such governing body reached as the result of public hearing held after ten days' notice that there no longer exists such a shortage in rental housing accommodations as to require rent control in such city, town or village, provided that such resolution is first approved by the Governor of the State before being transmitted to the Housing Expediter.

No standard is laid down as to what is or what is not a shortage of rental housing accommodations, nor is there any provision as to the procedure for or findings at a public hearing or how that public hearing is to reach any conclusion upon the question of whether or not rent control is no longer necessary or desirable. Upon the general theory that there are more tenants than landlords this provision would certainly be an undemocratic and unconstitutional way of determining whether or not rents should be controlled and limitations thus kept upon the rights of citizens freely to contract.

Acts of this kind have many times been declared unconstitutional. As near as I can determine from the decided cases it is not only permissible but necessary that power be delegated to administrative officers or agencies to determine the facts and apply the law to the facts as thus determined. Illustrations of this are too numerous to mention, such as the First and Second War Powers Acts, 50 U.S.C.A. Appendix, §§ 601 et seq., 631 et seq., as well as many others, but this is the first case that has come to my attention in which the Congress has attempted to leave it to other legislative bodies arbitrarily to determine whether or not they would be within or without the union so far as an Act of Congress is concerned—an Act which must depend upon the war power if it has any foundation at all. I can see no difference between this situation and one in which Congress should pass a selective service law with the provision that any State which doesn't care to send soldiers may pass a law and say they did not choose to be involved, or an Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., with the provision that any State that chose not to be governed thereby could declare itself out. I can see no reasonable reason to believe that an Act of Congress under its war powers can contain any such provisions as might make it inoperative at the option of any or all of the various States or subdivisions of States, by their arbitrary action and without guides, standards or specifications of facts.

This is not intended to indicate any doubt on my part that war powers may operate with inequality as among different States or portions of States if those inequalities necessarily result from substantial facts determined by lawful authority. Thus, I can see no objection to a Rent Control Act which is made applicable to various parts of the country depending on different states of facts and different conditions and necessities for carrying on the war, provided there is a pattern to follow and proper executive or administrative means laid out for its apportionment. Thus, when the Rent Control Act was passed it was recognized that there were vital defense areas in which controls must be exercised and these were to be determined by duly authorized administrators. Thousands of other executive orders of the First and Second War Powers Acts were likewise delegated to administrators to determine the facts and to apply the law as the facts might warrant.

The vice of the present law lies in its capriciousness, inequality of application, and total lack of any relationship between the carrying on of the war and the application of the law. It amounts to an abrogation of the power of Congress. Two or three States have already declared themselves out, thus repealing the war efforts so far as those States are concerned, and if the other States should see fit to do likewise the Act of Congress would be utterly repealed or completely emasculated without any further act of its own and without regard to any power to make or maintain war.

In the case of Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421, 424, 92 L.Ed. 596, which is relied upon by the plaintiff, the Housing Act of 1947, 50 U.S. C.A.Appendix, § 1881 et seq., is sustained as against an attack based upon unlawful delegation of the powers of Congress. However, that Act, as this one, contains the provision:

"The Housing Expediter is hereby authorized and directed to remove any or all maximum rents before this title ceases to be in effect, in any defense-rental area, if in his judgment the need for continuing maximum rents in such area no longer exists due to sufficient construction of new housing accommodations or when the demand for rental housing accommodations has been otherwise reasonably met."

Under this provision of the law the Supreme Court in the Woods case, speaking through Mr. Justice Douglas, said:

"Under the present Act the Housing Expediter is authorized to remove the rent controls in any defense-rental area *if in his judgment the need no longer exists by reason of new construction or satisfaction of demand in other ways.* (Emphasis supplied.) The powers thus delegated are far less extensive than those sustained in Bowles v. Willingham, supra, 321 U.S. [503] 512–515, 64 S.Ct. [641], 647, 88 L.Ed. 892. Nor is there here a grant of unbridled administrative discretion. The standards prescribed passed muster under our decisions."

The vice of the present Act lies in the very fact that no authorized person is required to use any judgment and there is a grant of unbridled administrative discretion subject neither to reason nor findings of fact. This delegation of power is not to an administrator whose selection is controlled by Congress but to States, municipalities, other subdivisions or town meetings. The case is no authority for the position taken by the plaintiff but rather to the contrary.

It is a grave and serious matter for any Judge or group of Judges to hold an Act of Congress to be unconstitutional. Nevertheless, it must sometimes be done. It was the intention of the framers of our Constitution that Federal Judges should be removed from politics and free from the popular clamor of transitory ideas and it was their intention that the Constitution should be a charter definitely and firmly fixed and to remain forever the law of the land unless and until it might be amended as therein provided. As Judges, our oath is not to support either the legislative or executive branches of Government, but only to support the Constitution. Unless we adhere firmly to this oath and fearlessly perform our duties as we see them, and to the best of our ability, it will be found some day that the liberties of the people have been eroded and such fundamental principles as the right to private property and freely to contract with respect thereto have been lost. In this connection I am considerably impressed by the language of Mr. Justice Jackson in his special concurrence in the Woods case:

"No one will question that this (war) power is the most dangerous one to free government in the whole catalogue of powers. It usually is invoked in haste and excitement when calm legislative consideration of constitutional limitation is difficult. It is executed in a time of patriotic fervor that makes moderation unpopular. And, worst of all, it is interpreted by Judges under the influence of the same passions and pressures. * * *

"Particularly when the war power is invoked to do things to the liberties of people, or to their property or economy that only indirectly affect conduct of the war and do not relate to the management of the war itself, the constitutional basis should be scrutinized with care. * * *

"I cannot accept the argument that war powers last as long as the effects and consequences of war for if so they are permanent—as permanent as the war debts."

■■ It is for these reasons that I have held the local option clauses to be invalid. There remains for consideration the question of whether or not the invalidity of these clauses invalidates the entire Act. That question in turn depends upon a construction of the saving clause, Sec. 305, and the interpretation of this clause must depend upon the intention of Congress as expressed in the preamble of the Act, indicated by the debates of Congress and whether or not it is the intention of Congress that the remaining portions of the Act should prevail with the major portion of its intent expressed in the preamble removed from the Act.

Preamble to the Act of 1949 is to be found in Section 201(a) and (b) of the Act of 1947 which are carried forward into the Act of 1949. This preamble declares the policy of Congress under the heading "Declaration of Policy" in the following language.

"(a) The Congress hereby reaffirms the declaration in the Price Control Extension Act of 1946 that unnecessary or unduly prolonged controls over rents would be inconsistent with the return to a peacetime economy and would tend to prevent the attainment of the goals therein declared.

"(b) The Congress therefore declares that it is its purpose to terminate at the earliest practicable date all Federal restrictions on rents on housing accommodations. At the same time the Congress recognizes that an emergency exists and that, for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents during the transition period, as well as the attainment of other salutary objectives of the above-named Act, it is necessary for a limited time to impose certain restrictions upon rents charged for rental housing accommodations in *defense-rental* areas. Such restrictions should be administered with a view to prompt adjustments where owners of rental housing accommodations are suffering hardships because of the inadequacies of the maximum rents applicable to their housing accommodations, and under procedures designed to minimize delay in the granting of necessary adjustments, which, so far as practicable, shall be made by local boards with a minimum of control by any central agency.

"(c) To the end that these policies may be effectively carried out with the least possible impact on the economy pending complete decontrol, the provisions of this title are enacted."

It is clear from a reading of this preamble, which is called a declaration of policy, that the principal object had in mind was to end that control, which it considered no longer desirable and to do so with the least possible impact upon the general economy. It is to be noted that no reference is made to a continuation of the war effort nor is there any definition of defense rental areas except as they had previously been determined by the Housing Expediter.

The principal argument for the plaintiff is based upon Section 305 of the present Act, which is as follows:

"If any provision of this Act or the application of such provision to any person or circumstances shall be held invalid, the validity of the remainder of the Act, and the applicability of such provision to other persons or circumstances, shall not be affected thereby."

It will be noted in considering this Section that the word is "provision", not the plural "provisions."

It is also to be noted that the reference "to any person or circumstance" is a customary clause added to many statutes by both State and Federal Governments intended to prevent the failure of the entire Act through the failure of some inconsequential portion thereof. A provision such as this is sometimes valid and sometimes invalid and it is a matter of judicial interpretation as to whether a saving clause of this kind can save an entire Act if the very essence and purpose of it is unconstitutional.

The debates of Congress are helpful although not controlling. A study of those debates indicates that very little thought was given to the question of constitution-

ality. Senators Bricker and Wiley exchanged some views on this point and some slight reference was made to it in the House, but practically all of the remarks in Congress, so far as they have been called to my attention, were directed to the economic problem of housing with no reference at all that I can find as to the necessity of this Act for the maintenance of a state of war. I must, therefore, place principal reliance on the preamble of the Act and Congress's own declaration of policy. As Congress itself stated, the principal object of the Act was to secure de-control at the earliest possible moment and with the least possible impact upon the general economy and it is entirely clear from all the sources available, including the debates in Congress, that the Act could never have passed without the local option provisions. They were the means principally relied upon as a way of returning the Government to the States and subdivisions immediately. Without these provisions there would be no way of de-controlling an area except through the powers given the administrator, and it is entirely clear from the local option provisions themselves that Congress did not consider those administrative means as adequate for accomplishing its declared purpose. Section 305 shows only an intention of Congress that if some single provision of the Act as applied to some particular circumstance should be held unconstitutional it should not affect the remainder of the Act. Congress did not say nor could it say that if the most vital portions of the Act were invalid the remaining fragments should prevail. It is my opinion that the unconstitutional portions of this Act, if considered with its preamble, greatly outweigh all of the other provisions for de-control.

This view of the case in my opinion is fully sustained by the majority opinion in Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. The saving clause in that case was identical with the saving clause in this one, and everything that was said in the majority opinion in that case, beginning on page 312 of 298 U.S., at page 873 of 56 S.Ct., is applicable to the case now under consideration. There is little point in my repeating it here because I consider myself bound by it and firmly believe it to be sound law. It is written in accordance with the general rule of frequent application that if the valid and invalid parts of a law are so bound together that the invalid part is a material inducement to the valid portion then the whole is necessarily invalid. I believe that is the situation in this case.

There is one more reason for holding this law indivisible and I think it is a conclusive one—one that closes the door on the argument. Had the Congress desired and intended to continue rent control without these local option clauses it could have done so by a simple Act extending the expiration date of the then existing law.

It follows that I must necessarily find the entire Act invalid and being invalid this Court has no jurisdiction. The judgment will therefore, be that the cause now is dismissed for want of jurisdiction.