**UNITED STATES v. BIZE et al.**
**UNITED STATES v. BIRD et al.**
**UNITED STATES v. FREY.**
Civ. Nos. 39–49, 42–49, 51–49.

United States District Court
D. Nebraska, Lincoln Division.

Sept. 2, 1949.

8. Woods v. Shoreline Cooperative Apartments, Inc., D.C.N.D.Ill.1949, 84 F.Supp. 660.

William S. Kaplan and Patrick O'Connor, both of Chicago, Illinois, and Ralph Adams of Omaha, Nebraska, for the plaintiff in all cases.

Max Kier of Lincoln, Nebraska, for the defendants in 39–49 and 51–49, and J. Victor Eitel, also of Lincoln, Nebraska, for the defendants in 42–49.

DELEHANT, District Judge.

Each of the foregoing actions is brought under the Housing and Rent Act of 1949, 50 U.S.C.A.Appendix, § 1881 et seq., and involves two counts, one within the amended Section 206(b) of the Housing and Rent Act of 1947 for injunctive relief including an order for restitution of alleged excessively collected rentals not limited to the period of one year prior to the filing of the complaint, the other within the amended Section 205 of the Act of 1947 for judgment for triple damages in respect of such excessive collections within one year before the filing of the complaint, but diminished by the amount of restitution which may be ordered, if any, in respect of rentals collected during the like period. In each case a motion has been filed by each defendant against whom the action remains pending. In case No. 39–49 a voluntary dismissal has been ordered as against Mrs. Ella Bize, leaving the action pending only against David Bize.

There is essential similarity, though not exact identity, in all of the motions; and the rulings severally made upon them will be explained very briefly in this single memorandum.

Each motion demands the dismissal of the entire action at which it is aimed, and also of each of its several counts, for failure of the complaint to state a claim upon which relief can be granted. Under

the reasoning of Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302; Musteen v. Johnson, 8 Cir., 133 F.2d 106; Sparks v. England, 8 Cir., 113 F.2d 579; Louisiana Farmers' Protective Union, Inc., v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419; Cool v. International Shoe Co., 8 Cir., 142 F.2d 318; Publicity Building Realty Corp. v. Hannegan, 8 Cir., 139 F.2d 583; and United States v. Arkansas Power & Light Co., 8 Cir., 165 F.2d 354; that portion of the motion is without merit and is, therefore, denied and overruled.

■ Alternatively, each motion asks that, so far as the motion to dismiss for inadequacy of claim be not sustained, the plaintiff be required separately to state and number the several causes of action supposedly contained within each count of the complaint assailed. The assumption of multiple causes of action within the several counts is mistaken. That is obviously true of each equitable count; and by statute, it seems also to be true of the several counts seeking personal judgments. (see penultimate sentence of Section 205 of the Act of 1947, carried through the several amendments of the Act).

■ Each motion challenges the jurisdiction of the court over the action by it assailed and over the several counts of such action, first because Section 206 (b) and (c) of the Act of 1947, as amended, assertedly fails to grant such jurisdiction to this court, and secondly, because the complaint fails to allege the presence of a controversy involving, exclusive of interest and costs, the amount or sum of $3000.00. Upon the first point no argument is made in support of the motion, and it is without any foundation. Upon its second ground, such motion is not well taken. In each count of each action the United States is the plaintiff. Its status is real, not merely ostensible or nominal. In the equitable count, it appears in virtue of its paramount interest in the current post-war economic stability of the nation and its citizens. In the count for the recovery of a judgment for damages, it appears in its own behalf seeking money, which, if it be successful, it proposes to retain. Jurisdiction, therefore, rests on Title 28 U.S.C.A., § 1345 under which there is no requirement in respect of a minimum amount in controversy. Presumably counsel for the moving defendants have in mind certain reported opinions of which Fields v. Washington, 3 Cir., 173 F.2d 701 is the leading example. Shortly stated, this court disagrees with the reasoning in the Fields case and those which have followed its lead. See Adams v. Backlund, D.C.Neb., 81 F.Supp. 643. But, even if the thought of Fields v. Washington, supra, be valid, it is quite inapplicable, as that opinion itself clearly discloses, to a case prosecuted by the United States in its own name and for its own benefit.

■ There is not the slighest merit in the contention, as a ground for dismissal, that the plaintiff is not the real party in interest. The observations of the foregoing paragraph effectively reject that supposition.

■ In No. 42–49 dismissal is sought for alleged misjoinder of defendants. But, even if it were a ground for dismissal, no such misjoinder appears upon the face of the complaint which clearly alleges joint action by both defendants. So, the request must be denied, as must also the alternative prayer for the specification of the several violative actions attributable to each defendant separately. So far as the complaint discloses, they are charged with equal participation in all violative acts. If that pleading be mistaken or false, the error may be pointed out in the answer or answers.

■ The motions in cases numbered 39–49 and 51–49 severally seek the striking from the complaint of all allegations touching the exaction of excessive rental charges at times more than one year before the institution of the respective cases. But such allegations are clearly pertinent in each of the counts dealing with the plaintiff's quest of equitable relief. That is true, first, because violative acts antedating the time as of which relief may be granted are instructive upon the purpose and intent with which overcharges still remediable were received, and upon the probability of continued future violations; and secondly because the power to order restitution is not limited by the statutory prescription of one year in reference to the recovery of damages based on rental overcharges.

944

Creedon v. Warner Holding Company, 8 Cir., 166 F.2d 119 (Construing and applying Porter v. Warner Holding Company 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332) Edwards v. Woods, 8 Cir., 168 F.2d 827; Ebeling v. Woods, 8 Cir., 175 F.2d 242; Blood v. Fleming, 10 Cir., 161 F.2d 292; Co-Efficient Foundation, Inc., v. Woods, 5 Cir., 171 F.2d 691; Creedon v. Randolph, 5 Cir., 165 F.2d 918; Woods v. Minucci, D.C.N.Y., 84 F.Supp. 535. The motions to strike such material are being denied and overruled.

 The defendants in No. 42-49 move for the dismissal of the entire action because the prayer for triple damages seeks relief in respect of violations allegedly occurring within one year before the institution of the action but before April 1, 1949, when, by the amendment of 1949, the right to sue for damages measured by rent overcharges was first conferred contingently on the United States of America. That motion must be denied and overruled, because a mere prayer for relief in excess of a plaintiff's right will not require the dismissal of his entire suit. If the rule were otherwise, few complaints would survive the period of preliminary pleading. Upon the question of the recoverability of a personal judgment based upon violations of the Housing and Rent Act antedating April 1, 1949, an expression of the still tentative opinion of the court will be offered in the course of its discussion of the final aspect of the motions in the other two cases.

 In No. 51-49 the defendant moves to dismiss on the ground that the Housing and Rent Act of 1949 is unconstitutional and void in that it vests in state and local authorities an unconstitutionally delegated power, namely the right to determine whether, and for what period of time the act shall be operative in the respective territorial areas of those state and local governments. Section 204 (j) (1) and (2), Housing and Rent Act of 1947, as amended by the Act of 1949. That contention is obviously grounded upon the thought of a substantially publicized decision denying the validity of the Act of 1949, rendered during the pendency of the other two cases now ruled upon, in and by the United States

District Court for the Northern District of Illinois, in the case of Woods v. Shoreline Cooperative Apartments, Inc., D.C.,Ill., 84 F.Supp. 660. This court does not share the informally reported view of the judge who made the ruling in that case. It is understood, also that an appeal is being prosecuted from his ruling; pending which, it appears to be appropriate that the Act should not be considered to be void. Actually, this court regards the reasoning and opinion of Judge Yankwich in United States v. Emery, D.C.Cal., 85 F.Supp. 354, as well founded and accurate.

 Finally, in each of cases numbered 39-49 and 51-49, the motion demands the striking "from the petition and each and every count thereof of all allegations pertaining to overcharges which occurred prior to the effective date of the last amendments to the Housing and Rent Act of 1947, to-wit, April 1, 1949". The premise of this request is the assumption that the granting in and by the Act of 1949 to the United States of America of any right to sue for a personal judgment based on overceiling rental exactions is prospective only in its operation and has no application to violations which occurred prior to April 1, 1949.

Regardless of the court's construction of the effective date of the Act of 1949 in the particular involved, the motion to strike of each of the several defendants must be, and is being denied. In the form in which it is framed, it seeks the complete elimination of all references in any part of the complaint to violations before April 1, 1949. But such allegations are clearly pertinent to, and proper in, the first count of each complaint, supra. Therefore, a motion that they be stricken from the complaint, or from count I thereof is not well taken.

 And even if the several motions were accurately aimed only at the allegations of count II of each of the several complaints, they should not be granted. The several reported opinions of the United States Court of Appeals, Eighth Circuit, first above cited, lead necessarily to that conclusion. With direct reference to the course now invited by the moving defendants it was said in Samuel Goldwyn, Inc.

v. United Artists Corporation, D.C.N.Y., 35 F.Supp. 633:

"A motion to strike paragraphs of complaint should be granted only when the allegations thereof have no possible relation to the controversy, and if the court is in doubt whether under any contingency the matter may raise an issue, the motion should be denied." See also French v. French Paper Company, D.C.Mich., 1 F.R.D. 531.

■ Whatever may be the practice in local state courts, or prior to the operation of the current rules, may have been the custom in this court, favor is not presently accorded here to the disposition of actions, before trial upon the basis of mere inaccuracies or incongruities or doubtful legal positions in pleadings; or to the preliminary excision from such pleadings upon like ground, of specific issues tendered by one or more of the parties. On the contrary, when cockle is thought to have been mingled with the wheat in the sowing which results from pleading, our courts follow the sage counsel of the 29th and 30th verses of Chapter XIII of the Gospel according to St. Matthew, and suffer both to grow until, and the separation to be made in, the harvest, not only lest in the too early removal of the cockle the tender wheat also be rooted up, but equally lest in their vernal immaturity, wheat be actually mistaken for cockle and, on that account, be purposefully but mistakenly destroyed.

Now, despite the preliminary opinion adverse to the plaintiff's position entertained by the writer of this memorandum (vide infra) upon the true construction of the applicable provision of the Act of 1949, the question is admittedly doubtful, and of it one may pertinently recall the Horatian declaration, "ad huc sub judice lis est." Therefore, the court ought not to grant the motions to strike the challenged material, even from the counts II of the several complaints; but ought to allow the plaintiff's claims to stand and be determined with finality upon the basis of the evidence received at the time of the trial and the state of the law as the court shall then appraise it, in the light, perhaps, of intervening controlling pronouncement upon it.

■ It is admittedly unnecessary that the court express its opinion, however tentatively, respecting the proper construction of section 204(a) and (b) of the Housing and Rent Act of 1949 whereby section 205 of the Housing and Rent Act of 1947 was first amended, and then in such manner as to grant a right of suit for its own use to the United States, after the failure of a tenant overcharged for rent, for thirty days following the making of the overcharge, to bring suit for attorneys fees, costs, and liquidated damages on account of the overcharge. Ordinarily no such expression would be volunteered and perhaps it should not be offered even in the present circumstances. However, counsel have briefed that question with industry and vigor and in the expressed expectation that the court's views upon it would be signified in this ruling. The attorneys for the plaintiff by agreement with the court and opposing counsel have been especially helpful by assembling all pertinent rulings within the superior sources of information of counsel for the Office of the Housing Expediter, whether favorable or adverse to the plaintiff's position. It is considered, therefore, that the view of the court as of the present time upon the question may not unbecomingly be indicated.

The text of the statutory section under consideration with appropriate indication of stricken language and with underlining emphasis upon the matter added by amendment, follows:

*"Recovery of Damages ~~by Tenants~~"*

Sec. 205. Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment (*or shall be liable to the United States as hereinafter provided*) for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceed the maximum rent which

could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount: *Provided,* That the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation: *'Provided, That if the person from whom such payment is demanded, accepted, or received either fails to institute an action under this section within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the United States may institute such action within such one-year period. If such action is instituted, the person from whom such payment is demanded, accepted, or received shall thereafter be barred from bringing an action for the same violation or violations.'* For the purpose of determining the amount of liquidated damages to be awarded to the plaintiff in an action brought under this section, all violations alleged in such action which were committed by the defendant with respect to the plaintiff prior to the bringing of action shall be deemed to constitute one violation, and the amount demanded, accepted, or received in connection with such one violation shall be deemed to be the aggregate amount demanded, accepted, or received in connection with all violations. A judgment in an action under this section shall be a bar to a recovery under this section in any other action against the same defendant on account of any violation with respect to the same ~~plaintiff~~ *person* prior to the institution of the action in which such judgment was rendered."

The question is whether, under that section, by virtue of the 1949 amendment, the United States may demand judgment based wholly or in part upon overcharges in rents exacted before April 1, 1949 but not more than one year before the filing of suit therefor. In the court's tentative opinion

that question should be answered negatively.

Let it be clearly understood that the court is satisfied that if the amendment of 1949 were so formulated as to have a retrospective effect, it would, nevertheless, be valid. The position of the several defendants to the effect that a retroactive construction of its applicability would render the amendment odious to the provision of Article I, section 9 of the Constitution of the United States forbidding the passage by the Congress of an ex post facto law, is rejected. An ex post facto law is one which imposes a punishment for an act which was not punishable when it was performed or a punishment in addition to that then prescribed. Burgess v. Salmon, 97 U.S. 381, 24 L.Ed. 1104; United States Ex rel. Forino v. Garfinkel, 3 Cir., 166 F.2d 887. It deals, therefore, with the definition of punishment of crimes rather than with legislation civil in character. Evans v. Robinson, C.C. Md, 8 Fed.Cas. 886, No. 4,571. Still, the Congress may not escape the impact of the constitutional prohibition of ex post facto legislation by giving a civil form to a statute which is criminal in substance. Burgess v. Salmon, supra; Cummings v. Missouri, 4 Wall. 277, 71 U.S. 277, 18 L.Ed. 356. Hence, laws that are actually and strictly penal statutes are within the constitutional denunciation. United States v. Hughes, D.C., 26 Fed.Cas. 414, No. 15, 416; De Pass v. Bidwell, C.C., 124 F. 615. But, the cited statute is not, and is not claimed to be a criminal enactment. Neither is it, by the weight of authority, penal in character. Crary v. Porter, 8 Cir., 157 F.2d 410; Kessler v. Fleming, 9 Cir., 163 F.2d 464; Heitmuller v. Berkow, 83 U.S. App.D.C. 70, 165 F.2d 961; Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917; although it must be recognized that there is authority to the contrary, to the extent that the statute confers a right of action for multiple damages on the government for its own benefit rather than on the injured tenant. Porter v. Montgomery, 3 Cir., 163 F.2d 211. In passing, it is to be observed that Section 205, both in its original form and as

amended, in express terms, defines the recovery allowed under it as "liquidated damages".

But the judicial characterization as a penalty of the recovery in the way of damages in an action of this nature would not be decisive in the case of the statute under examination. The amendment of 1949, even if it be allowed a retroactive effect, neither imposed a new obligation nor increased the former sanction for antecedent overcharges in rentals exacted by a landlord. At most, it reallocated the right of recovery in such manner as to make its actual pursuit far more probable than it formerly was. But that is no invalidating circumstance.

Even less convincing is the assertion by the defendants that the attribution to the amendment of 1949 of a retroactive operation would bring it into collision with the due process and just compensation clauses of the Fifth Amendment to the Constitution of the United States. This contention seems to issue from the solicitude of the defendants for the property of their respective tenants whose several rights to proceed against the respective defendants for theretofore actionable violations antedating April 1, 1949 would be abbreviated and in practice largely intercepted by the retroactive employment of the amendment. The property of the tenants, they say, would thus be transferred to the United States without due process, or just, or any, compensation. Accepting their altruistic interest at its ostensible value, the court may defer an answer to their basic argument until such time as, in a proper setting, it may be offered by an aggrieved tenant.

In summary, the court is satisfied that the amendment of 1949 might with full constitutional validity, have been given a retroactive effect. The real question in that connection is whether it was thus framed. And the court, at this time, is of the opinion that it was not.

A familiar rule of statutory construction, which need not be too insistently labored here, declares that, unless the contrary fairly appears by express declaration or necessary implication from the language of a statute, it will be presumed and considered to have only a prospective, and not a retroactive, operation. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Claridge Apartments Co. v. Commissioner of Internal Revenue, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139; Big Diamond Mills Co. v. United States, 8 Cir., 51 F.2d 721; Ford v. Cotter, 8 Cir., 33 F.2d 875. The presumption is clearly against retroactivity. And it is particularly strong when an antecedent operation would visit a theretofore non-existent harshness upon any person or group of persons.

Nowhere in the section of the statute under review is there any language declaring its retrospective operation. And nothing in the Act of 1949, necessarily or even reasonably, implies such operation. Its purpose is equally, and it may well be argued better, served by an entirely prospective application. The final section of the Act declares that it "shall become effective on the first day of the first calendar month following the month in which it is enacted." And that day was April 1, 1949, two days after its approval.

That ought, it would seem, to settle the question for the plaintiff does not even profess to find in the Act of 1949 any provision declaring its retroactivity. On the contrary, it contends chiefly that the legislative history of the Act of 1949 requires its retrospective application in reference to actions for damages. And the plaintiff's counsel have been very helpful to the court in its approach to this phase of the case by their provision of such history and of all known judicial expressions relevant to the issue both reported and unreported. Passing, for present purposes, over the grave question whether even instructive items of legislative history ought to be allowed to confer retroactivity on a statute which, fortified by established principles of statutory construction, is unambiguous upon the point, this court after careful examination of the material presented does not now consider that the items cited, either individually or in their entirety, rise to the dignity of controlling legislative history. It inclines rather to the view expressed by Judge Rodney in United

States v. Gianoulis, D. C. Del., 86 F. Supp. 933, with this added observation. It would seem that some legislative history beyond what was submitted to the court in the Gianoulis case has been presented in this action. But all of it is entirely indecisive and uninstructive. An unfavorable observation asserting the existence of retroactivity made in the course of the debate in the House of Representatives by a Congressional opponent of the measure may not be allowed to intrude into the Act an important element that it does not otherwise contain. And that is the only directly pertinent language in the submitted history supporting the plaintiff's contention. The other references to the formal debates upon the measure are manifestly ambiguous, indecisive and uninstructive upon the matter of retroactive operation. And that is notably true of the discussion by the chairman of the committee. Even the statements before the committee upon the point by the Expediter and his chief counsel are characterized by obsurity and equivocation, if not by calculated, and perhaps prudent, evasion. And the express reaction of the committee chairman to those observations betrays on his part a confusion and bewilderment touching the right theretofore vested in tenants to sue for triple damages and an impression that the allowance of such a right to tenants would be a novel grant to them. He speaks quite indiscriminately of *giving* him (the tenant) "the right to sue the landlord for treble damages for the past year" and also of "placing him in a secure position to sue these landlords" seeming thereby to recognize tardily that the right, as was the case, already existed. In any event, what was under discussion was suits in respect of overcharges during the then closing year to be brought by tenants, not by the government.

Finally, the plaintiff argues for a construction of the Act of 1949 favorable to retroactive operation of its amendment of the triple damage section of the Act of 1947 on the basis of the course pursued by the Congress in the amendatory Act of June 30, 1944 wherein the so-called "Chandler defense" to treble damage ac-tions was erected by way of an amendment to Title 50 U.S.C.A.Appendix, § 925(e), being section 205(e) of the Emergency Price Control Act of 1942, Title 50 U.S. C.A.Appendix, § 901 et seq. It points to subsection (c) of section 108 of the Act of June 30, 1944, 50 U.S.C.A.Appendix, § 925 note, which provided:

"(c) The amendment made by subsection (b), insofar as it relates to actions by buyers or actions which may be brought by the administrator only after the buyer has failed to institute an action within thirty days from the occurrence of the violation, shall be applicable only with respect to violations occurring after the date of enactment of this Act. In other cases, such amendment shall be applicable with respect to proceedings pending on the date of enactment of this Act and with respect to proceedings instituted thereafter."

And it asserts that the negation of retroactive effect contained in the first quoted sentence should be regarded as persuasive of a congressional purpose to accomplish a retroactive effect in the section of the Housing and Rent Act of 1949 now considered, because on the latter occasion the congress did not insert into the current legislation an identical or comparable provision denying it any retroactive operation.

The argument is completely unconvincing for at least two reasons. In the first place, it involves an obvious and quite absurd non sequitur. To negative a retroactive effect of the amendment of 1949 the legislators may very properly and sufficiently have relied upon the recognized presumption of prospective effectiveness only, supra. To affirm the necessity of the express negation in a congressional act of its retroactive operation, because that was done on a former occasion, is to argue tenuously and to invite intolerable prolixity and redundancy in nearly all legislation. In the second place and more persuasively, it neglects the very thing which historically prompted the quoted subsection (c), supra, in its entirety. The partial or limited defense based on the absence of a violator's wilfullness or failure to take practicable precautions to prevent viola-

tion was introduced into the triple damage provision of the Emergency Price Control Act of 1942, in relaxation of the inflexible and unjust rigor of the original act which made no allowance on the score of inadvertence or mistake and, mandatorily requiring a triple damage judgment, tolerated no judicial mitigation for extenuating factors. That harshness was discrediting the Act and imperiling both its persistence and its enforcement. The Congress was concerned that the benevolent features of the amendment of June 30, 1944 be made immediately effective for the benefit of persons already subject to the sterner Act of 1942. To accomplish that purpose a clause declaring their retrospective effect was required. And it was embodied in the general provisions of the second sentence of quoted subsection (c) of section 108, to whose sweeping operation, also by way of indulgence rather than harshness, the first sentence of the subsection provides an exception. That first sentence was rendered necessary, in the circumstances, to define the restrictions of the retroactivity which was otherwise granted to the amendment. It is not wholly uninstructive, moreover, that the caution of the Congress in the Act of June 30, 1944 in guarding against the retrospective operation of a legislative provision comparable to the one presently being examined reflects a congressional fidelity to the tradition against the retrospective imposition, upon those subject to the law, of sanctions for past indiscretions more harsh, whether in terms or in practical application, than those provided at the time of the offending act or omission.

For the present, therefore, and without further elaboration, the court signifies its tentative view that the plaintiff may not obtain a personal judgment against any defendant in any of these cases for stipulated damages based on overceiling rental charges by such defendant exacted and received prior to April 1, 1949.

So, while the motions to strike are being denied, it must be understood that the denial is not based on the thought that the material at which they are aimed should provide a basis of judgment for the plaintiff. The denial is made as an administra-

tive matter. It leaves the plaintiff's assertion of claims before the court, reserving, until the disposition of the actions on their merits, the final determination of the legal question which lies at the roots of the motions. And on that question, though unnecessarily, the court expresses its tentative opinion adverse to the position of the plaintiff. Doing which, it reserves the right at that later date to reexamine the issue in the light of any further authority, controlling or persuasive, which by that time may exist.

 The moving defendants are not being granted any enlarged time for answer; but are being required to serve and file their respective answers within ten days from this date. These are actions in which injunction is the relief primarily sought. Such injunctions may not, in any event, persist beyond the effective period of Rent Control over the area involved. The Legislature of Nebraska within the permission of the amendatory Act of 1949 has provided for an early termination of all rent control within the state. The court does not propose that through judicial indulgence or inattention the cases shall become moot in respect of the demand for such relief