Joe **CARROLL** et al., Plaintiffs,

v.

Robert H. **FINCH** et al., Defendants.

Civ. No. A-60-70.

United States District Court,
D. Alaska.

May 13, 1971.

John S. Hedland and Robert L. Kocsis, of Alaska Legal Services Corp., Anchorage, Alaska, for plaintiffs.

Douglas B. Baily, U. S. Atty., for defendants.

## MEMORANDUM OF DECISION AND ORDER

PLUMMER, Chief Judge.

The facts in this case are the same as those in Henry v. Betit, 323 F.Supp. 418 (D.Alaska 1971), with the exception that in this instance plaintiffs attempt to compel the federal government to release funds for the AFDC–UP Program regardless of whether or not the State submits an AFDC–UP plan. Plaintiffs allege that by conditioning funds upon the submission of a state plan (42 U.S.C.A. §§ 603, 607) Congress has unconstitutionally delegated its power in violation of Art. I, § 1 of the United States Constitution. Because of this procedure, plaintiffs assert, many needy families are deprived of benefits because of the state of their residence in violation of the equal protection principles read into the Fifth Amendment due process clause by Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Plaintiffs also contend that the preferred right to travel recognized in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) is infringed.

Defendants have moved to dismiss on three grounds: (1) No *individual* recipient would be entitled to more than $10,000.00 in benefits and the court therefore lacks jurisdiction under 28 U. S.C.A. §§ 1331 and 1332; (2) plaintiffs lack standing under Frothingham v.

Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078 (1923) and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); and (3) the complaint fails to state a claim because there is a rational purpose for the discrimination, to-wit: cooperative federalism. Because the court concludes that no claim is stated upon which relief can be granted, no opinion is expressed on the first two grounds for dismissal.

AFDC–UP is an exercise in "cooperative federalism." Grants-in-aid are available to only those states that submit an appropriate plan to the Secretary and provide matching funds to help support the program. 42 U.S.C.A. §§ 602(a) (2), 607(b). While the broad goals and definitions are established by Congress, each state is free to determine whether the program is "practicable under the conditions in such state." 42 U. S.C.A. § 601. Federal payments are made directly to the states for distribution in such amounts as shall be provided for by the individual states to individuals who meet the state's definitions of "needy." 42 U.S.C.A. § 601.

Although the Supreme Court has noted on several occasions that the AFDC program is "based upon a scheme of cooperative federalism", King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968), Dandridge v. Williams, 397 U.S. 471, 478 (1969),[1] it has never expressly been asked to decide whether the grant-in-aid method of funding, which leaves the question of participation to the states, is an impermissible delegation of Congressional authority which results in a denial of due process under the Fifth Amendment to needy persons in nonparticipating states.

■ The states, as states, are not persons in the context of the due process clause of the Fifth Amendment. South Carolina v. Katzenbach, 383 U.S. 301, 323, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). Nor do states have standing to raise the Fifth Amendment rights of their citizens with regard to federal grant-in-aid programs. Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 485–486, 43 S.Ct. 597, 67 L.Ed. 1078 (1929). On its face, AFDC–UP purports to address itself only to a federal-state relationship and it would seem that the only party with standing to object to its provisions would be a state—an eventuality foreclosed by Massachusetts v. Mellon, supra. Plaintiffs contend, however, that the AFDC–UP program is designed to meet a national need, and Congress could not delegate to the states the power to exclude themselves from the program if such exclusion would have constituted a denial of due process had Congress itself made the distinction. Wilemon v. Brown, 51 F.Supp. 978 (N. D.Tex.1943), rev'd on other grounds, 139 F.2d 730 (5th Cir. 1944).

Plaintiffs' contentions thus resolve themselves into two issues: (1) Could Congress have excluded plaintiffs from benefits under the AFDC–UP Act? (2) Assuming that Congress could have excluded plaintiffs from benefits under the Act, may it constitutionally delegate the exclusion function to state legislatures?

■ Although the equal protection clause of the Fourteenth Amendment is applicable only to the states, the concept of equal protection is inherent in the nature of due process under the Fifth Amendment. Bolling v. Sharpe, supra; Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964). While the two phrases are not always interchangeable, what is permissible state action under the Fourteenth Amendment would be a fortiori permissible under the less explicit guarantees of the Fifth Amendment. Steward Mach. Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).

■ In reviewing classifications made pursuant to welfare legislation, the test of constitutionality is whether the

---

1. See also H.R.Rep.No.615, 74th Cong., 1st Sess. 24 (1935); S.Rep.No.628, 74th Cong., 1st Sess. (1935).

classification is rationally related to a permissible purpose. Dandridge v. Williams, *supra*; Henry v. Betit, *supra*.[2] Congress could have lawfully concluded that in the light of peculiar unemployment conditions existing within the State of Alaska application of the AFDC–UP program would be inappropriate.[3]

In making the AFDC–UP optional, Congress acted to preserve the system of "cooperative federalism" whereby problems national in scope could be attacked in the manner most appropriate to conditions existing within the participating states. Plaintiffs argue that the true value of cooperative federalism is the opportunity for flexibility in experimentation in the individual states, and that this value is not at stake here because the states are al-lowed little latitude in the actual administration of the AFDC–UP program once the decision has been made to accept federal moneys. Aside from the logical inconsistencies between this position and plaintiffs' argument with regard to delegation of powers, the argument ignores the fact that the essential element of cooperative federalism is operative in this case: the right of the sovereign states to decide whether or not local conditions warrant implementation of the program within its boundaries.

Having concluded that Congress might have rationally enacted an "AFDC–UP program" which excluded Alaskans, is Congress nevertheless prevented from delegating the decision to the State of Alaska by Article 1, Section 1 of the Constitution?[4]

2. Plaintiffs contend that because this classification imposes burdens upon the constitutionally protected right to travel the court should apply an active standard of review and require the government to show a compelling interest served by the classification. *See* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). It would be incongruous to hold, as this court did in Henry v. Betit, *supra*, that a state need only show a rational purpose for a welfare classification and then apply an active standard of review to the same classification when the federal government acts to backstop that state policy. The right to travel is no less at issue when the state is challenged than when the federal government is sued for improper delegation resulting in a burden on travel. It might be argued that in Shapiro v. Thompson, *supra*, the state residency requirement penalized only those who traveled into the state, whereas if welfare were denied all residents the state policy would have been nondiscriminatory as between its own residents. In this respect a *national* policy which permits states to exclude all their citizens from benefits is discriminatory in a sense different from that of the individual state policies. The burden upon interstate travel remains the same, however, regardless of whether the state "discriminates" between its residents or simply refuses to enact welfare programs equal in benefits and coverage to its most liberal sister state. In either event, impoverished families will be "deterred" from moving into that state. There is, therefore, no ground for holding the federal government to a stricter standard of review for infringement of travel than the states. As for charges of arbitrary classification with respect to the program's application, Dandridge v. Williams, *supra*, requires only a "passive" standard of review.

3. Because of the highly seasonal nature of employment in much of rural Alaska, the AFDC–UP program would have the practical effect of establishing a guaranteed annual income for those welfare recipients in outlying areas. See Henry v. Betit, *supra*.

Defendants urge that a rational purpose may also be found in the desire to preserve limited state resources. This formulation, however, begs the question, as plaintiffs contend that the program's operation may not constitutionally be conditioned upon the approval or participation of the state and federal funds should be released regardless of whether or not the state agrees to match federal funds.

4. "All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Surprisingly enough, grants-in-aid have never been challenged on this ground. Most frequently the question arises in a suit by a state alleging a violation of the Tenth Amendment. *See, e. g.*, Massachusetts v. Mellon, *supra*; United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1936). Challenges on the ground

It has frequently been held that where implementation of a Congressional program necessarily depends upon changing conditions Congress need only state an intelligible principle, delegating authority to an agent charged with determining whether and to what extent the factual situation requires the application of the law. *See, e. g.*, Lichter v. United States, 334 U.S. 742, 785, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); Hirabayashi v. United States, 320 U.S. 81, 102, 63 S.Ct. 1375, 87 L.Ed. 1774 (1942); Hampton & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1927); Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1892); The Aurora, 11 U.S. 382, 7 Cranch 382, 3 L.Ed. 378 (1813).

■ This delegation usually takes the form of instructions to a member of the executive branch of the same sovereign. Congressional delegations to private groups have been upheld, however, Whittenburg v. United States, 100 F.2d 520 (1939), and *a fortiori* delegation of fact-finding authority to state legislatures is permissible. *See, e. g.*, United States v. Bize, 86 F.Supp. 939 (D.Neb. 1949) (holding that the Housing and Rent Act of 1949 was not unconstitutional as delegating to state and local authorities power to determine whether and for what time the Act should be operative *in their respective territories*). *See also* Woods v. Shoreline Cooperative

that state action in accepting federal grants-in-aid constituted an impermissible delegation of *state* legislative powers have also been common. The arguments made in these cases are applicable to the reverse situation presented in the instant case. See Mermin, "Cooperative Federalism" Again: State and Municipal Legislation Penalizing Violations of Existing and Future Federal Requirements: I, 57 Yale L.J. 1 (1947).

Apartments, Inc., 84 F.Supp. 660 (D.Ill. 1949), *reversed* 338 U.S. 897, 70 S.Ct. 248, 94 L.Ed. 551; Nilva v. United States, 212 F.2d 115, 118 (8th Cir. 1954), upholding provision for state exemption from the Johnson Act.[5]

■ In conclusion, a congressional determination that AFDC–UP should be inapplicable in states with unemployment problems characteristic to Alaska would be rationally related to the purposes of the legislation to help "parents or relatives to attain or retain maximum capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." 42 U.S.C.A. § 601 (1969). It was not impermissible in this respect for Congress to leave to the states the task of determining the extent to which the program is "practicable under the conditions" existing in the individual states.

■ The complaint does not allege substantial grounds for attacking the constitutionality of 42 U.S.C.A. §§ 603 and 607 (1969) and should be dismissed without convening a three-judge court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed.2d 152 (1933); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L. Ed.2d 512 (1962); Aronow v. United States, 432 F.2d 242 (9th Cir. 1970).

It is so ordered.

5. *See, also*, Phillips v. Comm'r of Internal Revenue, 283 U.S. 589, 602, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (fact that amount of federal tax depends upon provision of state law does not infringe constitutional prohibition against delegation of the taxing power); Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 190, 22 S.Ct. 857, 46 L.Ed. 1113 (1902) (state exemptions from the bankruptcy laws, upheld); Phoenix Ins. Co. v. Welch, 29 Kan. 672, 678 (1883) (contingency provided by law of sister-state).