## BURGESS *v.* SALMON.

In the forenoon of March 3, 1875, A. stamped, sold, and removed for consumption or use from the place of manufacture certain tobacco, which, under sect. 3368 of the Revised Statutes, was subject to a tax of twenty cents per pound. On the afternoon of that day, the President approved the act of March 3, 1875 (18 Stat. 339), increasing the tax to twenty-four cents per pound, but providing that such increase should "not apply to tobacco on which the tax under existing laws shall have been paid when this act takes effect." *Held*, that the increase of tax under that act did not apply to the tobacco so stamped, sold, and removed.

ERROR to the Circuit Court of the United States for the Eastern District of Virginia.

The facts are stated in the opinion of the court.

*Mr. Assistant-Attorney-General Smith* for the plaintiff in error.

*Mr. W. P. Burwell, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

The facts of this case, as agreed upon, were these: That Burgess was collector of internal revenue for the third collection district of Virginia, and in that capacity exacted from and received of Salmon & Hancock, and paid into the treasury of the United States, the sum of $377.80, as an additional tax of four cents a pound on a quantity of tobacco belonging to them. It was thus exacted on the third day of March, 1875, under the act of that date, which provides as follows: —

"That sect. 3368 of the Revised Statutes be amended by striking out the words 'twenty cents a pound,' and inserting in lieu thereof the words 'twenty-four cents a pound.'" . . . "*Provided*, that the increase of tax herein provided for shall not apply to tobacco on which the tax under existing laws shall have been paid when this act takes effect." 18 Stat. 339.

The act contains also the provision following, viz.: —

"Every person who removes from his manufactory tobacco without the proper stamp being affixed and cancelled . . . shall, for each offence, be fined not less than $1,000 and not more than $5,000, and be imprisoned not less than one year and not more than two years."

The tobacco in question was stamped, sold, and removed for consumption or use from the place of manufacture, and beyond the control of Salmon & Hancock, in the forenoon of March 3, 1875, and the above-named act of Congress was approved in the afternoon of that day, after the stamping and removal of this tobacco, which, when removed, had been stamped at twenty cents a pound. Payment of the additional four cents a pound was made under protest, and an appeal to the commissioner of internal revenue regularly taken and over-ruled.

The manufacturers brought suit to recover back the amount, and recovered judgment in the court below. The collector thereupon sued out this writ of error.

The case presents but a single point : Can a manufacturer be punished, criminally and civilly, — civilly here, — for the violation of a statute, when the statute was not in force at the time the act was done ? In other words, Can a person be thus punished when he did not contravene the provisions of the statute ? In still other words, Can one be punished for offending against the provisions of a statute from the effects of which he was expressly exempted ?

We are relieved by the agreed statement, to which reference is made, from examining a question of importance, and perhaps of difficulty, respecting the *punctum temporis* when a statute takes effect. Does it, as the collector contends, have operation in the present instance on the third day of March, 1875, and cover the whole of that day, commencing at midnight of March the second? If the time may be inquired into, to ascertain at what hour or what fraction of an hour of the day the form of the law becomes complete, is it to be ascertained by the court as a question of law, or to be decided as an issue of fact ?

It is agreed by the parties to the record that in fact the duty of twenty per cent had been paid on the tobacco in question, and it had been removed from the storehouse, before the act of March 3, 1875, took effect; and we content ourselves by acting upon that agreement.

We are of opinion that the government must fail, upon the facts agreed upon ; to wit, that the duty of twenty per cent had

been paid and the tobacco had been removed before the act had been approved by the President. The seventh section of article 1 of the Constitution of the United States provides that every bill which shall have passed the House of Representatives and the Senate shall, before it becomes a law, be presented to the President of the United States. If he approve he shall sign it, but if not he shall return it, with his objections, to that House in which it originated, . . . who shall proceed to reconsider it. . . . If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress, by their adjournment, prevent its return, in which case it shall not be a law.

In the present case, the President approved the bill; and the time of such approval points out the earliest possible moment at which it could become a law, or, in the words of the act of March 3, 1875, at which it could take effect.

In *Lapeyre* v. *United States* (17 Wall. 191), it was said *obiter*, " The act became effectual upon the day of its date. In some cases it is operative from the first moment of that day. Fractions of the day are not recognized. An inquiry involving that subject is inadmissible." The question involved in that case was whether a proclamation issued by President Johnson, bearing date of June 24, 1865, removing certain restrictions upon commercial intercourse, took effect on that day, or whether it took effect on the day it was published and promulgated, which was on the 27th of the same month. It was held by a majority of this court that it took effect from its date. The question was upon the 24th or the 27th of June, and the point of the portion of a day was not involved. While the general proposition may be true, that where no special circumstances exist, the entire day on which the act was passed may be included, there is nothing in that case to make it an authority on the point before us.

In the *Matter of Howes* (21 Vt. 619), it appeared that the Bankrupt Act was repealed March 3, 1843. Howes presented his petition on that day, and it was held that he was too late, that on questions of that nature there can be no divisions of a day.

In the *Matter of Welman* (20 id. 653), the question was the same, and decided in the same way. While stating the general rule as above, the court say they agree with Lord Mansfield in *Coombs* v. *Pitt* (4 Burr. 1423), that in particular cases the very hour may well be shown when it need and can be done.

*Arnold* v. *United States* (9 Cranch, 104) is in affirmance of the same general principle. The act of July 1, 1812, there discussed, provided " that an additional duty of one hundred per cent upon the permanent duties now imposed by law . . . shall be levied and collected on all goods, wares, and merchandises which shall, from and after the passage of this act, be imported into the United States from any foreign port or place." The goods were brought into the collection district of Providence on the first day of July, 1812. The court say, " The statute was to take effect from its passage, and it is a general rule that, where the computation is to be made from an act done, the day on which the act is done is to be included."

See the case of Richardson (2 Story, 571), decided by the same judge, sustaining the view just taken.

In the present case, the acts and admissions of the government establish the position that the duties exacted by law had been fully paid, and the goods had been surrendered and transported before the President had approved the act of Congress imposing an increased duty upon them.

To impose upon the owner of the goods a criminal punishment or a penalty of $377 for not paying an additional tax of four cents a pound, would subject him to the operation of an *ex post facto* law.

An *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was committed, or a punishment in addition to that then prescribed. *Carpenter et al.* v. *Commonwealth of Pennsylvania*, 17 How. 456.

Had the proceeding against Salmon & Hancock been taken by indictment instead of suit for the excess of the tax, and the one was equally authorized with the other, the proceeding would certainly have fallen within the description of an *ex post facto* law.

In *Fletcher* v. *Peck* (6 Cranch, 87), it was decided that an

act of the legislature by which a man's estate shall be seized for a crime which was not declared to be an offence by a previous law, was void.

In *Cummings* v. *Missouri* (4 Wall. 277), it was held that the passage of an act imposing a penalty on a priest for the performance of an act innocent at the time it was committed, was void.

To the same purport is *Pierce* v. *Carskaden,* 16 id. 234.

The cases cited hold that the *ex post facto* effect of a law cannot be evaded by giving a civil form to that which is essentially criminal. *Cummings* v. *Missouri, supra ;* Potter's Dwarris, 162, 163, note 9.

*Judgment affirmed.*