NATIONSBANK OF TEXAS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–21 T.

United States Court of Federal Claims.

June 17, 1999.

Reissued for Publication on August 30, 1999[1].

---

1. The Court's original opinion was entered as unpublished on June 17, 1999. This reissuance as a published opinion follows in response to Defendant's request for written publication. Additionally, as requested by Plaintiff, paragraph 8, beginning on page 2 below, modifies the previous paragraph 3, page 2, of said unpublished Court opinion dated June 17, 1999, and clarifies the refund claim amount in controversy in

Counts One through Six of the Complaint. The outcome of the opinion is not affected.

Hugh Lowe, Austin, Texas, for plaintiff. Duncan E. Osborne, Austin, Texas, of counsel.

Mary M. Abate and Mildred L. Seidman, Tax Division, U.S. Department of Justice, Washington, DC, for defendant, with whom was Loretta C. Argrett, Assistant Attorney General.

## OPINION

DAMICH, Judge.

The complaint in this tax refund case was filed January 9, 1998. A First Amended Complaint filed October 19, 1998, presents seven counts.

The case is before the Court on Plaintiff's Motion for Partial Summary Judgment regarding the Constitutional issues presented by Plaintiff's Rate of Taxation Claim in the amount of $1,320,190.07, as set forth in Counts One through Six of the Amended Complaint and Defendant's Cross–Motion for Partial Summary Judgment regarding Counts One through Six of the Amended Complaint. Plaintiff's motion is DENIED for the following reasons. Defendant's motion is hereby GRANTED.

Plaintiff's Deduction Claim in Count Seven of the Amended Complaint is not covered by the cross motions or this opinion.

## BACKGROUND

On December 20, 1993, Plaintiff filed a federal estate tax return with the IRS at Austin, Texas, and with it paid $11,121,906.63 in federal estate tax. Plaintiff is Nations-Bank of Texas, N.A., a national banking institution acting as Independent Executor for the Estate of Ellen Clayton Garwood.

The federal estate tax laws at 26 U.S.C. §§ 2001–2209 (Code) impose a tax on the transfer of assets in respect of decedents' estates. The amount of the tax is computed in accordance with the rate schedule at 26 U.S.C. § 2001(c).

The Economic Recovery Tax Act of 1981 (ERTA) contained a scheduled reduction in maximum estate tax rates from the then current rate of 70 percent down to 50 percent over four years. When the top rate was at 55 percent Congress extended that rate through 1987 by enacting the Deficit Reduction Act of 1984. In late 1987, Congress again extended the top rate of 55 percent until January 1, 1993.

In late 1992 Congress passed legislation to extend the 55 percent rate again, but failed to present it to the President within ten days of adjournment. President Bush refused to sign it, thereby subjecting it to a pocket veto pursuant to the powers granted the President in Article 1, § 7 of the Constitution. Consequently the highest rate defaulted to the previously scheduled (ERTA) 50 percent rate. *See* H.R. 11, § 3006, *reported in* H.R. Conf. Rep. No. 1034, 102d Cong. (1992).

When decedent died on March 20, 1993, with a gross estate of $28,108,968.72, the applicable estate tax rate was 50 percent. On August 10, 1993, President Clinton signed into law the Omnibus Budget Reconciliation Act of 1993 (OBRA). Section 13208 of Title XIII of OBRA amended 26 U.S.C. § 2001(c), permanently increasing the estate tax rate for the transfer of taxable estates over $3,000,000 back to the 55 percent rate. This rate increase was made retroactive to include the estates of decedents who died on or after January 1, 1993.

Plaintiff's refund Claim on Form 843, timely filed, sought a refund of $1,320,190.07, the difference in tax paid under the retroactively applied 55 percent rate and the former 50 percent rate in effect on the date of decedent's death (Counts One through Six of the Complaint). Plaintiff also sought a refund of

$35,107.89, the difference between claimed and allowed deductions for administrative and legal expenses of the estate, as well as additional deductions of an undetermined amount accrued in this case (Count Seven of the Complaint). The issue of Plaintiff's entitlement to the additional $35,107.89 in deductions, as well as any undetermined additional amounts, is to be decided separately.

## DISCUSSION

Defendant agrees entirely with Plaintiff's First Amended Proposed Statement of Uncontroverted Facts, and states that there are no genuine issues of fact material to the legal issues that are the subject of the parties' cross-motions. Summary Judgment is appropriate under RCFC 56 where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled to judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Count One:

### Violation of Separation of Powers Under Article 1, § 7, cl. 2 of the Constitution

■ Article 1, § 7, cl. 2 of the Constitution provides:

> Every Bill which shall have passed the House of Representatives and the Senate shall, before it becomes a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law.... If any bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the

Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

Plaintiff argues that the retroactive legislation is invalid because it violates the separation of Powers doctrine. According to Plaintiff, the effect of the retroactive application of § 13208 in OBRA '93 was to undo President Bush's pocket veto in violation of the separation of powers doctrine. The pocket veto is the strongest veto available to the President because Congress is unable to override it. It was granted by the framers of the Constitution as a check against last-minute legislation. Plaintiff claims that the framers' goal has not been served if it is permissible for the new Congress and President to pass the same legislation, making it retroactive to the date of the pocket veto. It is Plaintiff's position that Congress may enact pocket-vetoed legislation only prospectively. *The Pocket Veto Case,* 279 U.S. 655, 679 n. 6, 49 S.Ct. 463, 73 L.Ed. 894 (1929).

The Plaintiff misunderstands the legislative history of OBRA '93. OBRA '93, including § 13208, was not a act of Congress undertaken unilaterally to circumvent the Executive since it was signed by President Clinton. Furthermore, it was not a resuscitation of the pocket-vetoed legislation, but was an entirely new bill, introduced as H.R. 2264 during the first session of the new 103rd Congress. There is no Constitutional prohibition against the reintroduction and enactment of defeated legislation by a later or even the same Congress, whether or not the pocket veto is involved. *United States v. Alice Weil,* 29 Ct.Cl. 523, 547, 1800 WL 1873 (1894).

Moreover, *The Pocket Veto Case* cited as indirect authority by Plaintiff, is distinguishable from this case. Unlike the situation in that case, OBRA '93 was legislation introduced by a different Congress. In addition, *The Pocket Veto Case* dealt with the situation where a bill passed by Congress during its first session was pocket vetoed when Congress adjourned at the end of that session and in that instance fails to become law. (*Id.* at 679, 49 S.Ct. 463). Then,

> [I]f Congress so desires the same bill may be re-introduced and passed when Congress resumes its session, and after receiv-

ing the due consideration of the President, if returned with his objections, may be then passed by the requisite vote in both Houses.

(*Id.*, at 679 n. 6).

The Court holds that the 1993 retroactive increase in tax rates did not violate the Separation of Powers Doctrine expressed in Article I, Section 7 of the Constitution.

### Count Two:

### Violation of the Apportionment Clause under Article 1, §§ 2 and 9 of the Constitution

■ "No capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken." Article I, § 9, cl. 4 of the Constitution, in conjunction with Article 1, § 2 of the Constitution which establishes the method of apportionment. A tax is direct if levied directly upon property, such as upon a decedent's estate, but is not direct if the tax is upon the transfer of property from one person to another. The Supreme Court has held that the federal estate tax is not a direct tax. *Bromley v. McCaughn*, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226 (1929); *Fernandez v. Wiener*, 326 U.S. 340, 66 S.Ct. 178, 90 L.Ed. 116 (1945).

Plaintiff does not question the Constitutionality of the entire estate tax imposed by § 2001(a). It is Plaintiff's position, however, that because § 13208 was not in effect when the property rights transferred, the 5 percent increase imposed retroactively constitutes a direct tax and is thus prohibited. On two occasions, Plaintiff argues, the Court has found that Congress does not have the power to tax a transfer made before the tax act is in effect if the transfer is not made in contemplation of death. *Nichols v. Coolidge*, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) (the statute was not allowed to reach back and tax a gift that was made and became completely vested long before enactment at a time when the tax burden could not have been foreseen although the actual transfer occurred within the statutory period); *Untermyer v. Anderson*, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928).

It is important to note that the two cases cited did not present Apportionment Clause claims. Further, Plaintiff has failed to acknowledge what the Court said about *Nichols* and *Untermyer* in *Milliken v. United States*, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931). There the Court stated that "a tax is not necessarily and certainly arbitrary and therefore invalid because retroactively applied, and taxing acts having retroactive features have been upheld in view of the particular circumstances disclosed and considered by the court." *Id.* at 20, 51 S.Ct. 324.

Plaintiff also has failed to make the distinction between a statute that establishes a new tax and a statute that just changes the rate of an already established tax. In both *Nichols* and *Untermyer* the statute at issue levied a new tax not just a rate change. The Court in *Milliken* stated that a "mere increase in the tax...did not change its character." 283 U.S. at 24, 51 S.Ct. 324. It is the transfer of property that occasions the imposition of the estate tax and that excise imposed upon a granted privilege cannot "convert such tax to a direct levy on property" just by its retroactive application. *First Nat'l Bank in Dallas v. United States*, 190 Ct.Cl. 400, 420 F.2d 725, 726 (Ct.Cl.1970). It is undisputed that the tax imposed by Code § 2001(a) was in effect at the moment of death in this case to tax the entire transfer. Section 13208 of OBRA '93 just applied a higher rate, not a new tax, to the entire amount transferred.

*United States v. Manufacturers National Bank of Detroit*, 363 U.S. 194, 80 S.Ct. 1103, 4 L.Ed.2d 1158 (1960) did present an Apportionment Clause claim. In that case, although the transfer involved actions which predated the implementation of the taxing statute, the resulting taxation of the estate was not thereby converted into a prohibited direct tax. Likewise, in this case, although the Garwood transfer at the death of decedent occurred before § 13208 became law, it could be brought within the coverage of the rate increase without violating the Apportionment Clause.

The Court holds therefore, that the 1993 retroactive increase in tax rates does not constitute a direct tax as to any portion of

the Garwood Estate and does not violate the Apportionment Clause of Article I, §§ 2 and 7 of the Constitution.

### Count Three:

### Denial of Due Process under the Fifth Amendment to the Constitution

 The Fifth Amendment to the Constitution provides: "No person shall be ...deprived of life, liberty, or property without due process of law..." The test of invalidity of a retroactive tax law is whether the retroactive nature of the law "is itself justified by a rational legislative purpose." *United States v. Carlton*, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). In *Carlton* the Supreme Court upheld the retroactive application of an estate tax provision to correct a mistake that had afforded an unjustified tax loophole. Plaintiff argues that § 13208 of OBRA '93 violates the Due Process Clause of the Fifth Amendment to the Constitution because there was no mistake for Congress to cure with the retroactive rate increase enacted in this case, and therefore there was no rational legislative purpose for the retroactive application of § 13208.

Plaintiff is mistaken, however, because in *Carlton* the Supreme Court did not limit the retroactive application of revenue measures solely to situations where there is a curative purpose involved. The Court held that there must be a "rational legislative purpose" (*Id.* at 30–31, 114 S.Ct. 2018, quoting *Pension Benefit Guaranty Corp.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984)) and that the curative nature of the legislation in that case served such a purpose. The Court also held that the retroactive period must be "modest" and not excessive. (*Carlton*, 512 U.S. at 32–33, 114 S.Ct. 2018). In that case a period of slightly over a year was found to be acceptable, which is five months longer than the retroactive period established by § 13208 of OBRA '93.

The Court has made it clear that statutes "adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and .... the burden is on one complaining of a due process violation to establish that the legislation has acted in an arbitrary and irrational way." *Usery v.*

*Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

The Court holds that Plaintiff has not met that burden. The 1993 retroactive increase in tax rates is within precedential limits and does not violate the Due Process Clause of the Fifth Amendment to the Constitution.

### Count Four:

### Denial of Equal Protection under the Fourteenth Amendment to the Constitution

 Although the Equal Protection Clause of the Fourteenth Amendment applies only to the states, equal protection principles have been applied at the federal level under the Fifth Amendment's due process protections. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Plaintiff argues that in this case a group of taxpayers, including Plaintiff, was discriminated against in being required to pay higher taxes than the law required when the taxable event occurred. In cases that do not affect a fundamental right and where the subject class is not one for whom the law gives special protection (e.g., race, national origin, gender), laws that affect a particular class of persons more harshly than others will be struck unless the government can espouse a rational relationship to a legitimate governmental goal. *See, e.g., Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985). The rational basis test requires the law in controversy to have a rational relationship to a legitimate governmental interest. The need to raise revenue to reduce the budget deficit alone is an indefensible reason, according to *Carlton*, 512 U.S. at 37, 114 S.Ct. 2018, therefore § 13208 is unconstitutional. Further, Plaintiff asserts that the Court has strengthened the rational basis test, and has required that the reasonableness of all legislative class designations be reviewed in a more meaningful manner. For example, in *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985), a state law that imposed a higher tax on out-of-state insurance companies than on instate companies violated equal protection guarantees.

■ Plaintiff overlooks a crucial point. In this case, no narrow class of taxpayers was discriminated against by § 13208. There was no "other group" whose treatment was more advantageous. Instead, this taxpayer and others similarly situated would have been the only "other" group involved and would have been treated more advantageously than all other decedents since 1984 had this legislation not reinstated the previous rate. Section 13208 put all decedents having estates valued in excess of $3,000,000 who died during the period of 1984 through the present, including those who died during the retroactive period, on an equal footing.

It has been made clear that "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification.... This standard is especially deferential in the context of classifications made by complex tax laws." *Nordlinger v. Hahn,* 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). See also *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). The Supreme Court has said, "Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. See *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990); *Bowen v. Gilliard,* 483 U.S. 587, 600–603, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987); *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174–179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Dandridge v. Williams,* 397 U.S. 471, 484–485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).

The Court finds that in addition to the legitimate governmental purpose of raising revenue and distributing the tax burden, this legislation promoted tax equity by putting the estates of decedents dying between January 1, 1993, and August 10, 1993, in parity with the estates of decedents who died during the previous nine years and those who died after August 10, 1993, therefore § 13208 affirmatively promoted equal tax treatment by retroactively reestablishing the 55 percent rate that had been in effect for decedents who died during the preceding nine years and that would be in effect in the future.

The Court holds that the 1993 retroactive increase in tax rates does not violate the equal protection guarantees of the Due Process Clause of the Fifth Amendment to the Constitution.

### Count Five:

### Violation of Takings Clause under the Fifth Amendment to the Constitution

■ The Takings Clause of the Fifth Amendment to the Constitution provides: "[N]or shall private property be taken for public use, without just compensation." Plaintiff argues that OBRA's retroactive rate increase violates this prohibition and cites *Nichols v. Coolidge,* 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) for the proposition that the retroactive feature of a tax law may make it "so arbitrary and capricious as to amount to confiscation" and *United States v. Darusmont,* 449 U.S. 292, 296, 101 S.Ct. 549, 66 L.Ed.2d 513, (1981) for the proposition that the permissible period the retroactive tax may cover is confined to the "short and limited periods required by the practicalities of producing national legislation."

Plaintiff points out that there is a difference between income tax and estate tax. The taxpayer is being taxed on income acquired during the whole year, justifying a retroactive application to cover that period. The estate tax, however, is based on a momentary event, the transfer of title at the death of the decedent which makes a retroactive period of eight months arbitrary and § 13208 therefore unconstitutional under the Takings Clause.

This argument is not convincing because the legislative process that resulted in the enactment of § 13208 of OBRA '93 took from February 1993 to August 10, 1993, and it was made retroactive just one additional month to

the beginning of the year, January 1, 1993. The Supreme Court held that the 14-month retroactive period of an estate tax statute was "modest" and thus not offensive of due process. *United States v. Carlton*, 512 U.S. 26, 32–33, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). Had § 13208 been made retroactive only during the pendency of the legislation it would not have helped Plaintiff since the decedent died March 20, 1993.

The Court is satisfied that the period during which § 13208 was made retroactive was not unreasonable in light of *Carlton* which also concerned an estate tax statute. *Id.*

The Court holds that the 1993 retroactive increase in tax rates does not violate the Takings Clause of the Fifth Amendment to the Constitution.

### Count Six:

### Violation of *Ex Post Facto* Clause under Article 1, § 9, cl. 3 of the Constitution

■ The Constitution prohibits Congress from enacting an *ex post facto* law. "No Bill of Attainder or Ex Post Facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. Since its decision in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), the Supreme Court has interpreted this prohibition as applying only to criminal enactments and as having no application to retroactive civil legislation. In asserting that § 13208 is unconstitutional as a prohibited *ex post facto* law, Plaintiff relies on *Burgess v. Salmon*, 97 U.S. 381, 24 L.Ed. 1104 (1878) in which the Court said, "To impose upon the owner of the goods a criminal punishment or a penalty" for not paying the retroactive tobacco tax increase would subject the owner to the operation of an *ex post facto* law. *Id.* at 384, 24 L.Ed. 1104. Likewise, Plaintiff asserts, the Code is saturated with criminal penalties. As example, it is a criminal offense for "any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, or keep any records, or supply any information" to fail willfully "to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or

regulation..." 26 U.S.C. § 7203. In enacting the Code "Congress has not categorized tax fraud investigations into civil and criminal components but has created a law enforcement system in which criminal and civil elements are inherently intertwined." *United States v. La Salle Nat'l Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Plaintiff argues that all sanctions afforded by the Code are potentially criminal in nature because the penalties are on a continuum from less to more harsh depending on the degree of delinquency. *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943). In the alternative, Plaintiff asserts that the prohibition against *ex post facto* laws should apply to civil laws with retroactive provisions also because there has been substantial criticism of *Calder v. Bull.*

Plaintiff does not claim all substantive tax laws are criminal in nature, but rather that the enforcement provisions lend a potentially criminal nature to all Code sections in that the taxpayer might be criminally liable by refusal to pay the tax imposed under any section of the Code.

Plaintiff's interpretation is untenable because it would make every retroactive tax law *ipso facto* an unconstitutional *ex post facto* law. Such an interpretation does not accord with the decisions of the Supreme Court or with the Congressional taxing power granted by the Constitution. In this case, only by proceeding in a criminal manner and refusing to pay the tax as levied would the estate be subject to criminal sanctions. That would constitute punishment for an action occurring subsequent to the enactment of § 13208. Plaintiff paid the tax on time and the Court is satisfied that the institution of this cause of action indicates in the clearest possible way that criminal refusal to pay was not a necessary precursor to Plaintiff's right to challenge the law as promulgated.

Regarding the application of the *ex post facto* prohibition to civil statutes, *Calder* is still followed and this Court is bound by its precedent. *California Dep't of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Fern v. United States*, 15 Cl.Ct. 580, 588, *aff'd*, 908 F.2d 955 (Fed. Cir.1990).

The Court holds that the 1993 retroactive increase in tax rates did not contravene the prohibition against *ex post facto* laws set forth in Article I, § 9, cl. 3 of the Constitution.

## CONCLUSION

This Court finds that Plaintiff has failed to support the allegations contained in Counts One through Six of the complaint. For the reasons herein set forth, Plaintiff's Motion for Partial Summary Judgment is DENIED. Defendant's Motion for Partial Summary Judgment regarding Counts One through Six of the Complaint is GRANTED.