NATIONSBANK OF TEXAS, N.A.,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 00–5113.

United States Court of Appeals,
Federal Circuit.

Oct. 30, 2001.

Hugh Lowe, Osborne, Lowe, Helman & Smith, L.L.P., of Austin, TX, argued for plaintiff-appellant. With him on the brief was Duncan E. Osborne.

Ellen Page Delsole, Attorney, Tax Division, Appellate Section, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief was Teresa E. McLaughlin, Attorney. Of Counsel was Donald B. Tobin, Attorney.

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

RADER, Circuit Judge.

On summary judgment, the United States Court of Federal Claims held that NationsBank of Texas, acting as independent executor of the Estate of Ellen Clayton Garwood, deceased, could not recover estate taxes. *NationsBank v. United States*, 44 Fed. Cl. 661, 669 (1999). Because the Court of Federal Claims correctly held that section 13208 of Title XIII of the Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13208, 107 Stat. 312, 469 (OBRA), is constitutional, this court affirms.

### I.

The federal estate tax law imposes a tax on the transfer of decedents' estates. The rate schedule at 26 U.S.C. § 2001(c) sets the amount of the tax. The Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 402, 95 Stat. 172, 300–01, contained a scheduled reduction in maximum estate tax rates from the then-current rate of seventy percent down to fifty percent over four years. When the top rate was fifty-five percent, the Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 21, 98 Stat. 494, 506, extended that rate through 1987. Later the Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 10401(a), 101 Stat. 1330, 1330–430, further extended the top rate of fifty-five percent until January 1, 1993.

In late 1992, Congress passed legislation to extend the fifty-five percent rate again, but did not present it to the President within ten days of adjournment. President Bush did not sign it, instead using a "pocket veto" under Article I, Section 7, Clause 2 of the Constitution. Thus, the fifty-five percent rate lapsed on January 1, 1993. The highest rate defaulted to the previously scheduled fifty-percent rate.

When Ms. Ellen Clayton Garwood died in March 1993, with a gross estate of $28,108,968.72, the applicable estate tax rate was fifty percent. On August 10, 1993, President Clinton signed OBRA into law. Section 13208 of Title XIII of OBRA amended 26 U.S.C. § 2001(c), permanently increasing the estate tax rate for the transfer of taxable estates over $3,000,000 back to the fifty-five percent rate. OBRA also made the rate increase retroactive to include the estates of decedents who died on or after January 1, 1993. Under these provisions, Ms. Garwood's estate fell subject to the fifty-five percent rate.

NationsBank sought a refund of $1,320,190.07, the difference in tax paid under the retroactively applied fifty-five percent rate and the former fifty percent rate in effect on the date of Ms. Garwood's death. In its complaint filed in the Court of Federal Claims, NationsBank asserted that OBRA's retroactive rate increase violated several provisions of the Constitution, including the separation of powers doctrine, the apportionment clause, the *ex post facto* clause, the takings clause, the due process clause, and the equal protection clause. On the Government's summary judgment motion, the Court of Federal Claims addressed counts one through six of NationsBank's complaint and held that OBRA did not violate the Constitution. *NationsBank*, 44 Fed. Cl. at 664–69. The parties then stipulated to the dismissal of count seven, the only remaining count, and the Court of Federal Claims dismissed the complaint. NationsBank appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(3) (1994).

### II.

This court reviews the Court of Federal Claims' grant of summary judgment without deference. *Abrahamsen v. United States*, 228 F.3d 1360, 1362 (Fed. Cir.2000). Summary judgment is appropriate where the record shows no genuine issue of material fact and the movant is

entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The determination of the constitutionality of a statute is a question of law, which this court reviews without deference. *Demko v. United States,* 216 F.3d 1049, 1052 (Fed.Cir.2000).

◼ Article I, Section 7, Clause 2 of the Constitution requires presentation of a bill to the President. That clause also states:

If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

U.S. Const. art. I, § 7, cl. 2. As described above, President Bush did not sign a bill to extend the fifty-five percent rate beyond January 1, 1993. Because Congress prevented return of the bill by adjourning, President Bush "pocket vetoed" the bill under Article I, Section 7, Clause 2.

OBRA made the fifty-five percent rate retroactive to January 1, 1993, which had the same effect as if President Bush had signed the bill presented to him in 1992. However, OBRA did not abrogate the President's pocket veto power. OBRA was separate from the bill that the President pocket vetoed in 1992. OBRA independently met the constitutional requirements for enactment, namely passage by both houses of Congress and approval by the President. Nothing in the Constitution prohibits a new Congress, or even the same Congress, from reenacting defeated legislation. This principle applies as well to legislation rejected by a pocket veto. *United States v. Weil,* 29 Ct.Cl. 523, 547 (1894). Article I, Section 7, Clause 2 of the Constitution prohibits enactment of a bill not presented in time. Article I, however, does not prohibit Congress from re-introducing and passing again the same subject matter in another bill. Moreover the second bill may have a retroactive effect. Therefore, section 13208 does not violate the separation of powers doctrine.

### III.

◼ The apportionment clause states: "No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken." U.S. Const. art. I, § 9, cl. 4. A tax is direct if levied directly upon property, such as an *ad valorem* tax on a decedent's estate; it is not direct if levied on the transfer of property from one person to another. *Fernandez v. Wiener,* 326 U.S. 340, 352, 66 S.Ct. 178, 90 L.Ed. 116 (1945). The federal estate tax is not imposed on the property itself, but rather on the transfer of property at the time of death. Therefore, the estate tax is not a direct tax. *Id.*

◼ The retroactive application of the increased rate in this case did not change the estate tax from an indirect to a direct tax. The lower rate was in effect at the time of the actual property transfer. Notably, Ms. Garwood's estate was subject to a fifty percent tax rate at the time of her death. Section 13208, however, did not impose a new tax on property already transferred, but merely increased the rate of the indirect tax on the transfer which had occurred earlier. The five-percent increase in the rate, even applied retroactively, does not change the character of the estate tax from a non-direct tax to a direct tax. The tax is still a tax on the transfer of property. *See Milliken v. United States,* 283 U.S. 15, 24, 51 S.Ct. 324, 75 L.Ed. 809 (1931) (a "mere increase in the tax … did not change its character"); *First Nat'l Bank v. United States,* 190 Ct.Cl. 400, 420 F.2d 725, 732 (1970).

Therefore, section 13208 does not violate the apportionment clause.

## IV.

■ The Constitution prohibits enactment of an *ex post facto* law. U.S. Const. art. I, § 9, cl. 3. This prohibition, however, applies solely to criminal enactments. *Calder v. Bull,* 3 U.S. 386, 390–91, 3 Dall. 386, 1 L.Ed. 648 (1798). The Supreme Court's decision in *Burgess v. Salmon,* 97 U.S. 381, 384, 24 L.Ed. 1104 (1878), does not make section 13208 criminal in nature and thus within the *ex post facto* prohibition. In *Burgess,* the Supreme Court stated: "To impose upon the owner of the goods a criminal punishment or a penalty" for not paying a retroactive tobacco tax increase before the tax became effective would subject the owner to the operation of an *ex post facto* law. *Id.* Accordingly, the Court held that the tax increase was unconstitutional because the Government could have brought a criminal action against the taxpayer for not paying the increased taxes before the tax became effective. *Id.* at 384–85. At the outset, the taxpayer in this case has timely paid the tax and seeks a refund. Thus, the taxpayer is not subject to any criminal penalty. In this sense, this case is significantly different from *Burgess.*

Although the tax code does contain many provisions eventually subjecting recalcitrant taxpayers to criminal liability for refusing to pay taxes, the entire tax code is not criminal in nature. If the entire tax code were criminal, every retroactive tax law would become an unconstitutional *ex post facto* enactment. To the contrary, the Supreme Court has acknowledged Congress' constitutional authority to enact retroactive tax laws. *See, e.g., United States v. Carlton,* 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994).

In *Burgess,* the statute imposed criminal penalties on taxpayers who refused to pay increased taxes on goods shipped before enactment of the tax increase. 97 U.S. at 384. The taxpayers in *Burgess* sought a refund of the increased amount of the tax because they could not have avoided the increase on goods already shipped. *Id.* at 382. Thus, the *Burgess* taxpayers could not avoid potential criminal penalties. Unlike the taxpayer in *Burgess,* NationsBank could have, and did, avoid any possibility of criminal sanctions. NationsBank timely paid the additional tax and brought a refund suit. The Government could only have imposed criminal sanctions on NationsBank if NationsBank had committed criminal fraud after the enactment of OBRA.

This court notes that the dissent in this case is not the only criticism of the limitations on *ex post facto* prohibitions acknowledged in *Calder.* However, the Supreme Court has not overruled *Calder.* Thus, this court must follow that rule. Because section 13208 of OBRA is not a criminal statute, it is not an *ex post facto* enactment.

## V.

■ A retroactive tax can constitute a taking under the Fifth Amendment of the Constitution if the retroactive feature makes it "so arbitrary and capricious as to amount to confiscation." *Nichols v. Coolidge,* 274 U.S. 531, 542–43, 47 S.Ct. 710, 71 L.Ed. 1184 (1927). Furthermore a retroactive tax can be a taking if the retroactive reach extends temporally beyond "short and limited periods required by the practicalities of producing national legislation." *United States v. Darusmont,* 449 U.S. 292, 296–97, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981).

■ The legislative process that resulted in the enactment of section 13208 took from February 1993 to August 10, 1993. Section 13208 extended its retroactive

reach back only one additional month to the beginning of 1993. Notably, the Supreme Court has previously upheld as "modest" an estate tax revision that reached back fourteen months. *Carlton*, 512 U.S. at 32, 114 S.Ct. 2018. In this case, the retroactive extension of section 13208 encompassed only the "short and limited periods required by the practicalities of producing national legislation." *Darusmont*, 449 U.S. at 297, 101 S.Ct. 549. Thus, the Court of Federal Claims correctly held that section 13208 did not constitute a taking under the Fifth Amendment.

Moreover, the Supreme Court has noted that where "due process arguments are unavailing, 'it would be surprising indeed to discover' the challenged statute nonetheless violat[ed] the takings clause." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 641, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)). Moreover, this court has echoed: "[T]he Supreme Court has regarded the Takings Clause as a first cousin of the doctrine of substantive due process." *Branch v. U.S.*, 69 F.3d 1571, 1578 (Fed.Cir.1996). Therefore, because the retroactivity challenge to this enactment can not succeed under due process standards as discussed below, the challenge under the takings clause also fails.

## VI.

■ Under the due process clause of the Fifth Amendment, "a rational legislative purpose" must justify a retroactive enactment. *Carlton*, 512 U.S. at 31, 114 S.Ct. 2018. In other words, statutes "adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irra-

tional way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

■ In *Carlton*, the Supreme Court upheld the retroactive application of the estate tax to correct a mistake that had afforded an unjustified tax loophole. 512 U.S. at 32–33, 114 S.Ct. 2018. *Carlton* does not stand for the proposition, however, that a retroactive enactment only has a rational legislative purpose when it corrects a mistake to close a loophole. Indeed all legislation in some sense corrects a perceived deficiency in past legal remedies and standards. The Supreme Court in *Carlton*, however, did not limit the retroactive application of revenue measures solely to enactments with a curative purpose. Rather the Supreme Court noted that timing was the essential purpose of making that enactment retroactive. The Supreme Court found the "rational legislative purpose" for the timing change in the procedural promptness of the enactment, accepting the reasoning of the Legislative Branch that the benefits of a "modest" retroactive application outweighed the burdens. *Id.* at 32, 114 S.Ct. 2018. The Court noted that the prompt enactment only imposed a "modest" fourteen-month retroactive period. *Id.* at 32, 114 S.Ct. 2018. Likewise, in this case, section 13208 promptly filled the temporal gap in the fifty-five percent rate. Imposition of a uniform fifty-five percent rate on estate tax transfers regardless of the particular month in which they occur suffices to supply the requisite rational purpose. Accordingly, NationsBank has not established that the "modest" eight-month retroactive period of section 13208 was arbitrary and irrational.

Another "rational legislative purpose" justifies this enactment. As noted below, this enactment achieves the purpose of treating similarly situated taxpayers simi-

larly. Because this rational legislative purpose invokes an equal protection analysis, the next section of this discussion sets forth that purpose.

## VII.

 Although the Equal Protection Clause of the Fourteenth Amendment applies only to the states, the Supreme Court has applied equal protection principles to the federal government under the Fifth Amendment's due process protections. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). "This standard is especially deferential in the context of classifications made by complex tax laws." *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). NationsBank argues that the retroactive effect of section 13208 discriminated against it by requiring it to pay higher taxes than the law required when the taxable event occurred. NationsBank also asserts that the need to raise revenue to reduce the budget deficit alone is not a legitimate governmental interest for retroactive application of section 13208.

Section 13208 did not discriminate against any narrow class of taxpayers because it did not treat any "other group" more advantageously. In fact, this legislation promoted tax equity and gave itself a further rational purpose by putting a first group of estates, those of decedents who died between January and August 1993, in parity with a second group of estates, those of decedents who died either during the nine years before 1993 or after August 1993. Were it not for section 13208's retroactive effect, the estate tax law would have applied a lower rate to the first group of estates, giving them more advantageous treatment than the second group of estates. Under section 13208, the estate tax law treats both groups equally. Accordingly, section 13208 not only complies with equal protection principles, it furthers those principles. Section 13208's retroactive effect does not violate equal protection principles because it is rationally related to the legitimate governmental purpose of raising revenue and fairly distributing the tax burden.

## CONCLUSION

The Court of Federal Claims correctly concluded that section 13208 complies with the requirements of the Constitution.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

PLAGER, Senior Circuit Judge, dissenting:

I cannot dispute that the weight of judicial opinion, though not the weight of either history or logic, currently argues for affirming the judgment of the trial court; the majority dutifully rounds up the usual judicial suspects. But there are times when the gap between law and justice is too stark to be ignored. This is one of them. It is simply unfair, and I believe it should be unconstitutional, in these circumstances to enact a statute that imposes a tax on a citizen based on an event that occurred before the tax was enacted. Retroactive legislation is inherently offensive to the natural law of decency, to the principles of the social compact set out in the Declaration of Independence, and to the underlying tenets of the Constitution.

And from the viewpoint of the taxpayer, it is no help to say that the basic tax was already in place, only the amount has increased; it is the amount that counts.

Yes, the majority has the law on its side, if following what other courts have said is the law. Perhaps understandably, courts have been unwilling to confront Congress in an area that has been viewed as peculiarly the province of the legislature: the raising of revenue for the Government's purposes. In so doing, however, fundamental constitutional principles have had to be bent and distorted.

Plaintiff in this case cites a number of constitutional principles that could well dictate a result opposite to that reached. I need address only one. Article I, Section 9 of the United States Constitution, reciting the powers of and restrictions on Congress, provides that "No ... ex post facto Law shall be passed." The courts tell us that this provision certainly applies to criminal laws-it would be unconstitutional to criminally punish someone more harshly for an act based on a law enacted after the act was committed. Yet the same courts tell us that it is not unconstitutional to tax away a citizen's property based on a harsher law enacted after the event that triggered the tax.

Most citizens are basically law-abiding, and live and die with little if anything that could be called criminal on their records. But few citizens who live long enough to become economic contributors die without being subjected to an *ex post facto* tax assessment of one kind or another. That is wrong. The Constitution should work for the benefit of the law-abiding as well as those who run afoul of the law. Nothing in Article I, Section 9 says otherwise.

Congress is perfectly capable of raising all the revenue it needs without making its tax laws reach backward, taking property from citizens based on events that, at the time they occurred, were not subject to the new law. Congress has its role, but that role must be consonant with basic principles of law, which include fundamental notions of fairness and fair-dealing. The Constitutional prohibition against *ex post facto* laws rests upon those notions. The preservation of individual freedom requires the protection of property rights as well as liberty interests.

The trial court observed that an interpretation of the Constitution such as this suggests would make every retroactive tax law *ipso facto* an unconstitutional *ex post facto* law. That is not necessarily so. There may be compelling circumstances in which it is necessary to the essential working of government—for example, when national security concerns are involved—that a law, perhaps even a tax law, be made retroactive. This is not such a case. Here, Congress attempted to make the increased tax rate effective at a time when it would have properly applied to this decedent. The President, pursuant to his Constitutional authority, prevented that law from taking effect. Now Congress seeks to attain the same result by subsequent legislation made retroactive. Congress should not be permitted to disregard an exercise of the President's Constitutional authority, and a citizen's property rights should not be subjected to such high-handed governmental action when there is no compelling reason to justify it.

The Supreme Court often has said that retroactivity is not favored. If Congress fails to heed that injunction, and to treat its citizens fairly, consistent with Constitutional principles, it is the duty of the courts to say so. The origin of the notion that *ex post facto* civil legislation is not precluded by Article I, Section 9, is attributed to *Calder v. Bull,*[1] a 1798 Supreme Court decision in which several of the Justices

---

1. 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798).

opined on the subject. Neither history[2] nor logic[3] supports the proposition. Even those who attempt to find some reason for the distinction confess its shortcomings.[4]

It is time for the Justices of the Supreme Court to make their views clearly understood, and to assign *Calder v. Bull* and its progeny to the historic dustbin where they belong. See, e.g., Justice Thomas, concurring in *Eastern Enterprises v. Apfel*, 524 U.S. 498, 538–39, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), and Justices O'Connor and Scalia (with whom Justice Thomas joined), concurring separately in *United States v. Carlton*, 512 U.S. 26, 35–42, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994).

I would reverse, and hold for the estate of the decedent.

Opinion for the court filed by Circuit Judge RADER. Senior Circuit Judge PLAGER dissents.

**2.** *See, e.g.,* Oliver P. Field, *Ex Post Facto in the Constitution,* 20 Mich. L.Rev. 315 (1921).

**3.** *See, e.g.,* Harold J. Krent, *The Puzzling Boundary Between Criminal and Civil Retroactive Lawmaking,* 84 Geo. L.J. 2143 (1996). For an exhaustive, and scathing, critique of current Supreme Court jurisprudence on the topic, see Laura Ricciardi & Michael B.W. Sinclair, *Retroactive Civil Legislation,* 27 U. Tol. L.Rev. 301 (1996).

**4.** Krent, *supra. See also* Laurence H. Tribe, *American Constitutional Law* § 10–2 (2d ed.1988).