**Thomas A. DEMKO and Penn Arms, Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5121.

United States Court of Appeals, Federal Circuit.

June 9, 2000.

Rehearing and Rehearing En Banc Denied Aug. 15, 2000.

Richard E. Gardiner, Fairfax, Virginia, argued for plaintiffs-appellants.

A. Wray Muoio, Attorney, Tax Division, Appellate Section, Department of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Loretta C. Argrett, Assistant Attorney General; and Ann B. Durney, Attorney. Of counsel was Rachel I. Wollitzer, Attorney.

Before NEWMAN, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

SMITH, Senior Circuit Judge.

Thomas A. Demko and Penn Arms, Inc., appeal from the decision of the Court of Federal Claims denying their motion for summary judgment and granting the United States' cross-motion for summary judgment. Specifically, the court held that the Bureau of Alcohol, Tobacco and Firearms ("ATF") had the authority to classify the Striker–12 shotgun as a "destructive device" as defined in 26 U.S.C §§ 5845(a)(8), (f)(2) (1994), and thus subject to a $200.00 transfer tax pursuant to 26 U.S.C. § 5811 (1994). *See Demko v. United States*, 44 Fed.Cl. 83 (1999). Because the Court of Federal Claims correctly found that the ATF had the authority to classify the Striker–12 shotgun as a "destructive device" within the meaning of the statute, we affirm.

## Issues

The two issues addressed in this appeal are (1) whether the CFC erred in holding that the ATF had the authority to classify the Striker–12 shotgun as a "destructive device"; and (2) whether the CFC correctly held that the standard "generally recognized as particularly suitable for sporting purposes" contained in 26 U.S.C. § 5845(f)(2) is a constitutional delegation of legislative power.

## Background

The National Firearms Act ("NFA") provides for the taxation of manufacturers, importers and dealers in certain firearms and machine guns. See 26 U.S.C. §§ 5812, 5822, 5841, 5845(a)(8), (f)(2) (1994). The NFA is part of the Internal Revenue Code, and the Secretary of the Treasury has the authority to enforce and administer such provisions. See 26 U.S.C. § 7801(a) (1994). The NFA imposes a $200 tax on the transfer of firearms, which includes destructive devices.[1] The Secretary of the Treasury has delegated the authority to enforce this transfer tax to the ATF. See Treasury Department Order No. 221, 1972–1 C.B. 777.

The Striker–12 shotgun has an eighteen-inch barrel with a bore of more than one-half inch in diameter. See Demko, 44 Fed. Cl. at 84. The shotgun uses a spring-driven revolving cylinder magazine with a capacity of twelve shotgun shells, which can be fired from the shotgun in three seconds or less. See id. The ATF ruled that the Striker–12 is a destructive device within the meaning of 26 U.S.C. § 5845(f) because its physical characteristics indicate that the gun is a military-type shotgun, rather than one suitable for sporting purposes. See ATF Rul. 94–2.

## Facts

Penn Arms, Inc. applied to the ATF for permission to transfer a Striker–12 shotgun to Demko in his individual capacity. See Demko, 44 Fed.Cl. at 85. The ATF approved the transfer of the shotgun and pursuant to 26 U.S.C. § 5811, imposed a $200 tax. The tax was paid upon transfer, and Demko and Penn Arms timely filed a request for refund of the tax. The ATF did not render a decision on the refund request. Subsequently, Demko and Penn Arms filed a refund suit in the Court of Federal Claims. See Demko, 44 Fed.Cl. at 85.

On cross-motions for summary judgment, the Court of Federal Claims rejected Demko's and Penn Arms' claim that the ATF improperly classified the Striker–12 shotgun as a "destructive device" within the meaning of 26 U.S.C. § 5845(f)(2). See Demko, 44 Fed.Cl. at 86–87, 92. The statute defines the term "destructive device" to include the following:

> any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, *except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes.*

26 U.S.C. § 5845(f)(2) (1994) (emphasis added).

Demko and Penn Arms argued that the qualifying clause of the statute "which the Secretary finds is generally recognized as particularly suitable for sporting purposes" should be interpreted to only modify the term "shotgun shell," and thus exclude the word "shotgun" from the definition of a "destructive device." See Demko, 44 Fed. Cl. at 86, 89. The Court of Federal Claims concluded that the "plain meaning of the

---

1. "There shall be levied, collected, and paid on firearms transferred a tax at the rate of $200 for each firearm transferred, except, the transfer tax on any firearm classified as any other weapon under section 5845(e) shall be at the rate of $5 for each such firearm transferred.... The tax imposed ... shall be paid by the transferor." 26 U.S.C. § 5811 (1994).

statute indicates that the qualifying language within the exclusionary clause is applicable to both shotgun and shotgun shell." *Id.* at 96. The court held that such a reading of the statutory language is consistent with Congress' goal in enacting the legislation requiring the tax on firearms, to achieve greater control and regulation of weapons that can be used in violent crimes. *See id.* at 92.

The court also found that the ATF properly had the authority to classify a shotgun and/or shotgun shells as not "generally recognized as particularly suitable for sporting purposes." *See id.* at 95–96. Specifically, the court found the grant of authority constitutionally sufficient because "Congress has provided an intelligible principle, which applies to limited circumstances and is capable of review in a proper proceeding." *Id.* at 96. Thus, the court denied Demko's and Penn Arms' motion for summary judgment, and granted summary judgment in favor of the United States ("Government"). *See id.* at 97.

### Jurisdiction and Standards of Review

■ This court has jurisdiction over an appeal from a final judgment of the Court of Federal Claims. *See* 28 U.S.C. § 1295(a)(3) (1994). "We review a grant of summary judgment completely and independently, construing the facts in the light most favorable to the non-moving party." *Good v. United States*, 189 F.3d 1355, 1360 (Fed.Cir.1999). The issue of statutory interpretation is a question of law, which we review completely and independently. *See Cathy v. United States*, 191 F.3d 1336, 1338 (Fed.Cir.1999). Likewise, the issue of the constitutionality of a statute is also a question of law, which this court reviews completely and independently. *See, e.g., Costain Coal, Inc. v. United States*, 126 F.3d 1437, 1440 (Fed.Cir.1997).

### Classification of the Striker–12 Shotgun as a "Destructive Device"

On appeal to this court, Demko and Penn Arms argue that the Striker–12 shot-gun is not a "destructive device" within the meaning of 26 U.S.C. § 5845(f)(2), and thus they are due a refund on the tax. They argue that the qualifying clause modifies only the term "shotgun shell" and not the word "shotgun." Thus, they contend that the statute excludes all shotguns from the definition of a "destructive device." The Government argues that the words of the statute are not ambiguous, and the plain language of § 5845(f)(2) indicates that the qualifying clause modifies both "shotgun" and "shotgun shell."

■ Statutory interpretation begins with the language of the statute itself. *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *Hoechst–Roussel Pharms., Inc. v. Lehman*, 109 F.3d 756, 758, 42 USPQ2d 1220, 1222 (Fed.Cir.1997). "When the terms of a statute are unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances. Moreover, absent a clearly expressed legislative intention to the contrary, a statute's plain meaning must ordinarily be regarded as conclusive." *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395, 13 USPQ2d 1628, 1630 (Fed.Cir.1990) (internal quotation marks and citations omitted). "To determine whether the statutory language is plain and unambiguous, we look at 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *International Business Machines Corp. v. United States*, 201 F.3d 1367, 1372 (Fed.Cir.2000) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).

■ In the instant case, the words of the statute are not ambiguous, and the plain language of § 5845(f)(2) indicates that the qualifying clause modifies both "shotgun" and "shotgun shell." A plain reading of the statute indicates that the entire dependent clause is a limitation on those weapons that fall within the definition of a destructive device. Such a read-

ing is consistent with Congress's goal in enacting the legislation requiring the tax on firearms, "to achieve greater control and regulation of weapons that can be used in violent crimes." *See United States v. Tribunella,* 749 F.2d 104, 109 (2d Cir. 1984); *see also United States v. Thompson/Center Arms Co.,* 504 U.S. 505, 517, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992). Further, the legislative history makes clear that Congress intended that the qualifying clause modify both "shotgun" and "shotgun shell." *See* H.R.Rep. No. 90–1956 (1968), reprinted in 1968 U.S.C.C.A.N. 4426, 4427 ("The Senate amendment is essentially the same as the House bill, except that ... excluded from the definition are *shotguns and shotgun shells* found by the Secretary to be suitable for sporting purposes.") (emphasis added); *see also* S.Rep. No. 90–1501, at 30, 47 (1968) (The report of the Senate Committee on the Judiciary explained the amendment to the definition of "destructive device" and stated that the definition provides an exception for "any *shotgun shell or shotgun* generally recognized as particularly suitable for shooting sport purposes.") (emphasis added).

In addition, logic and common sense dictate that the qualifying clause modifies both "shotgun" and "shotgun shell," otherwise § 5845(f)(2) would have the incongruous effect that no shotgun could be a "destructive device," but all shotgun shells (except those generally recognized as particularly suitable for sporting purposes) would be "destructive devices." *See generally Price Waterhouse v. Hopkins,* 490 U.S. 228, 241, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (stating that "[w]e need not leave our common sense at the doorstep when we interpret a statute"), superseded by statute as stated in *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal. 1992).

Demko and Penn Arms rely on the doctrine of the last antecedent as support for their argument that the word "shotgun" is excluded from the definition of a "destructive device." They contend that the word "shotgun shell" is the last antecedent, and thus the qualifying clause only modifies "shotgun shell" and not "shotgun."

The doctrine of the last antecedent is a canon of statutory construction, which states that "qualifying words, phrases and clauses must be applied to the words or phrases immediately preceding them and are not to be construed as extending to and including others more remote." *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.,* 881 F.2d 801, 804 (9th Cir. 1989) (emphasis added).

 We need not reach the issue of the doctrine of the last antecedent because the statute is unambiguous. However, even if we were to agree with Demko and Penn Arms that the word "shotgun shell" is the last antecedent, the doctrine would not control in this case because it would create an absurd result. *See generally Squillacote v. United States,* 747 F.2d 432, 433–34 (7th Cir.1984) (suggesting that the doctrine of the last antecedent is inapplicable when it creates absurd or otherwise conflicting results). When a statute is as clear as a glass slipper and fits without strain, courts should not approve an interpretation that requires a shoehorn.

We note that the issue whether the Striker–12 shotgun "is generally recognized as particularly suitable for sporting purposes" is not before this court. Thus, we hold that the Court of Federal Claims did not err in concluding that the Striker–12 shotgun was properly classified as a "destructive device" within the meaning of 26 U.S.C. § 5845.

### Delegation of Legislative Authority

Demko and Penn Arms argue that the phrase "generally recognized as particularly suitable for sporting purposes" contained in 26 U.S.C. § 5845(f)(2) is an unconstitutional delegation of legislative authority. They also argue that the words "particularly suitable for sporting purposes," when preceded by the phrase

**1054**

"generally recognized as," makes the entire phrase lose its intelligibility by "making the Secretary's determination dependent not upon an analysis of the quantifiable characteristics of the instrument itself, but rather upon whether some unspecified group recognizes the instrument as 'particularly suitable for sporting purposes.'"

■■ The nondelegation doctrine provides that "Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. United States*, 500 U.S. 160, 165, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). However, the doctrine "does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches." *Id.* "Thus, Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors." *Id.* "So long as Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Mistretta v. United States*, 488 U.S. 361, 372, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (internal quotation marks and citation omitted).

■ We hold that the phrase "generally recognized as particularly suitable for sporting purposes" of § 5845(f)(2) is not an unconstitutional delegation of legislative power. The sporting purposes standard in § 5845(f)(2) is the same standard as that contained in a provision of the Gun Control Act of 1968, 18 U.S.C. § 925(d)(3), which directs the Secretary to allow the importation of firearms which are "generally recognized as particularly suitable for or readily adaptable to sporting purposes." Courts have previously upheld classifications made by the ATF pursuant to § 925(d)(3). *See Gilbert Equip. Co., v. Higgins*, 709 F.Supp. 1071 (S.D.Ala.1989), aff'd, 894 F.2d 412 (11th Cir.1990); *see*

*also Gun South, Inc. v. Brady*, 877 F.2d 858, 866 (11th Cir.1989).

The sporting purpose standard of § 5845(f)(2) restricts the ATF's discretion by excluding from the definition of a destructive device shotguns and shotgun shells commonly used for sporting purposes. Thus, Congress has provided sufficient boundaries to the ATF's authority. Further, the delegation of power to the ATF meets the "intelligible principles" test because Congress has provided sufficient guidelines for the ATF to follow in determining whether a shotgun or shotgun shell falls within the definition of a destructive device. In addition, the phrase "generally recognized as" does not make § 5845(f)(2) lose its intelligibility merely because the Secretary of the Treasury delegated its authority to enforce this provision to the ATF.

*Conclusion*

For the reasons given above, the judgment of the Court of Federal claims is *AFFIRMED.*

*Costs*

Each party to bear its own costs.